**Margaret McGLONE, Plaintiff,**

v.

**Charles LACEY, Defendant.**

**Civ. No. 68–34S.**

United States District Court
D. South Dakota, S. D.

Sept. 12, 1968.

Richard Braithwaite, of Braithwaite, Cadwell & Braithwaite, Sioux Falls, S. D., appeared in behalf of the plaintiff.

John B. Shultz, Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., appeared in behalf of the defendant.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

This is a diversity action brought by Margaret McGlone, a Missouri citizen, against Charles Lacey, a South Dakota citizen and an attorney at law, for negligently letting the statute of limitations run on a personal injury suit, which she claimed to have authorized the defendant to handle on her behalf. The cause comes before this court on the defendant's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The defendant claims that there was no contractual relationship, either express or implied, or attorney/client relationship that existed as between the plaintiff and the defendant at the time that the statute of limita-

tions ran on Mrs. McGlone's personal injury claim.

From the affidavits submitted by both parties, it is apparent that the basic facts out of which this motion developed are uncontroverted, the only question remaining being that of the existence of a contractual relationship existing between the parties. On May 8, 1964, plaintiff was injured in a fall on premises owned by a Mr. and Mrs. William Chambley, from which fall she sustained permanent injuries and incurred medical and hospital expenses as well as expenses for household help and medical services for the rest of her life. On or about February 21, 1967, plaintiff sent to the defendant an authorization authorizing the defendant to represent the plaintiff in the personal injury claim on a contingent fee basis, which document is signed by the plaintiff. This authorization was accompanied by a letter to defendant signed by plaintiff's daughter, Margaret M. Austin, in which the daughter relates information pertinent to her mother's personal injury claim and requests the defendant to "see what, if anything, can be done to bring this matter to some conclusion (favorable to Mrs. McGlone, if possible) as soon as possible."

On March 1, 1967, the joint letters of Mrs. McGlone and Mrs. Austin were answered by the defendant Lacey's partner, Mr. Parliman. Mr. Parliman's letter reads in full: "Mr. Lacey is in the Legislature, and will return in the middle of March, at which time, he will contact you." A copy of this letter was sent to Mr. Lacey upon which he wrote the word "fine" and returned the copy to Mr. Parliman.

The next correspondence between the parties occurred on May 11, 1967, when Mrs. McGlone wrote to Mr. Lacey stating: "I have heard nothing from you with regard to this matter to date and am, naturally, very anxious to have some word from you at this time." This letter was answered by Mr. Lacey on May 17, 1967. At that time Mr. Lacey in-

formed Mrs. McGlone that "he was shocked to learn that the statute of limitations ran against your claim May 8, 1967." Mr. Lacey's letter also states in part:

On March 1, 1967, my associate advised you that I would return from the Legislature the middle of March, at which time "he will contact you." The papers, with many others, were placed upon my desk on March 13, 1967, upon my return. I immediately became very heavily involved in several matters of pending litigation and it so happens that by then I had completely forgotten the nearness of the deadline, if I had ever been aware of it. In cleaning up my work I did handle the file once or twice, but this single matter I did not get to. * * * I did not check with other attorneys who returned the file to you, because it is not my practice to rely upon the decisions of others in such matters.

The liability of the defendant Lacey to the plaintiff McGlone would seem to rest entirely upon the fact of whether or not there was an employment contract between the two, or whether an attorney/client relationship existed as between them. Upon the court's request, counsel for both parties filed briefs upon the question of whether any legal duty existed which would require the defendant to inform the plaintiff of the running of the statute of limitations upon her claim should he decide not to accept the employment. It should be pointed out that counsel for neither party were able to cite authority imposing such duty.

To substantiate his claim that no attorney/client relationship existed between himself and the plaintiff, defendant submitted an affidavit signed by himself and his partner beforementioned, Mr. Parliman, which stated that at no time did the defendant accept a retainer, nor was anything done in an effort to prosecute the plaintiff's claim. The affidavit further states that no fee has been paid by the plaintiff. The defendant cites in part, 7 Am.Jur.2d, Attorneys at Law, Paragraph 91:

"The authority of an attorney begins with his retainer; but the relation of attorney and client is not dependent on the payment of a fee, nor is a formal contract necessary to create this relationship. The contract may be implied from conduct of the parties. The employment is sufficiently established when it is shown that the advice and assistance of the attorney are sought *and received* in matters pertinent to his profession." (Emphasis supplied)

There is no doubt that Mr. Lacey's services were sought, but there is no evidence that they were ever received. There is no disagreement between the parties that South Dakota law would apply to the case.[1]

1. Pertinent sections of the Contract section of the South Dakota Code are as follows:
10.0101 Definition. A contract is an agreement to do or not to do a certain thing.
10.0102 Essential elements of a contract. Elements essential to existence of a contract are:
(1) Parties capable of contracting;
(2) Their consent;
(3) A lawful object; and
(4) Sufficient cause or consideration.
10.0301 Essential elements of consent; freedom; mutuality; communication.
Consent of the parties to a contract must be:
(1) Free;
(2) Mutual; and
(3) Communicated by each to the other.
10.0316 Communication of consent. Consent can be communicated with effect only by some act or omission of the party contracting, by which he intends to communicate it or which necessarily tends to such communication.
10.0601 Express or implied contracts; definitions.
A contract is either express or implied.
An express contract is one, the terms of which are stated in words.
An implied contract is one, the existence and terms of which are manifested by conduct.

■ Assuming the fact that both parties were capable of entering into contractual relationships, the only question remaining is the determination of Mr. Lacey's conduct to discover whether or not he had entered into the contract as offered by Mrs. McGlone. The acceptance of such offer would determine the defendant's liability in the present action. Mr. Lacey's only conduct was that of silence after the initial letter sent by Mr. Parliman to Mrs. McGlone saying that Mr. Lacey was in the Legislature and that he would contact her upon his return. The Restatement of the Law of Contracts, 1932 Edition, Volume 1, Sec. 58, states:

## NECESSITY OF UNEQUIVOCAL ACCEPTANCE

Acceptance must be unequivocal in order to create a contract.

Comment:

a. An offeror is entitled to know in clear terms whether the offeree accepts his proposal. It is not enough that the words of a reply justify a probable inference to assent.

Illustrations:

1. A Sends an order for goods to B. B replies that the order will receive his attention. There is no contract.

In effect, the defendant, through his partner Mr. Parliman, only promised to give the matter his attention. This alone would not indicate an agreement to be employed.

■ Silence will not of itself constitute an acceptance. In Solis-Cohen v. Phoenix Mutual Life Insurance Company, 413 Pa. 633, 198 A.2d 554 (1964), the court stated: "Silence will not constitute acceptance of an offer in the absence of a duty to speak." The personal injury claim for which Mr. Lacey's services were sought was offered to him on a contingent fee basis. It is well established that the percentage of the contingent fee varies greatly depending upon the expense of pursuing the intended litigation and the prospect for success in the litigation. With that in mind, it could well be concluded that Mrs. McGlone invited a counter-offer from Mr. Lacey in which he would either state from the facts known to him, should he consider them sufficient, what percentage he would require for a contingent fee or else request an interview by which he could obtain the necessary information upon which to determine what percentage fee he would request to handle the claim. The importance of the percentage of the contingent fee is pointed out in Sitton v. Clements, 385 F.2d 869 (6th Cir. 1967), which also is a suit brought against an attorney who had permitted the statute of limitations to run in an action. When a suit of this nature is brought, the trier of fact must determine what recovery would have been gained from the prosecution of the suit had not the statute barred such prosecution. An additional factor to then consider is the amount by which this sum would be reduced by attorney's fees under the contingent fee basis, since any recovery gained would have been subject to the contingent fee agreement. The *Sitton* case involved a written contingent fee agreement providing for fifty per cent fee upon the recovery of any sum through litigation. This amount was taken into consideration in computing the attorney's liability for permitting the running of the statute barring suit in the matter.

As is pointed out by counsel for the defendant, had the defendant sought a contingent fee which the plaintiff had felt to be unreasonable, the plaintiff could have withdrawn the offer of employment. Here the court is asked to determine what a reasonable fee would be for a suit such as Mrs. McGlone's personal injury claim as well as the determination of the amount that Mrs. McGlone was entitled to because of her injuries sustained in the fall on the Chambley property.

■ It is the general rule that an attorney's liability for malpractice is limited to some duty owed to a client. 7 Am.Jur.2d, Attorneys at Law, Sec. 167, Page 146. Where there is no attor-

ney/client relationship there is no breach or dereliction of duty and therefore no liability.

It may be asserted that there was a duty to speak by the defendant Lacey, at least in regard to the matter of the statute of limitations. Much as we may wish to agree with this contention, we find no support therefor in the authorities. The defendant's motion for summary judgment is hereby granted.

This memorandum decision shall constitute the Court's findings of fact and conclusions of law.