Elizabeth A. DUNCAN

v.

The Honorable Charles A. LORD.

Civ. A. No. 74–2011.

United States District Court, E. D. Pennsylvania.

Feb. 12, 1976.

Sol H. Weiss, Paul R. Anapol, Philadelphia, Pa., for plaintiff.

John Rogers Carroll, Philadelphia, Pa., for defendant.

## OPINION

HUYETT, District Judge.

Before us is the question of the amount of damages to be awarded plaintiff Elizabeth A. Duncan in this legal malpractice action. The issue of liability was previously resolved against defendant when he defaulted and we entered judgment for plaintiff pursuant to Fed. R.Civ.P. 55(b)(2). The complaint on which defendant defaulted charged that, as plaintiff's then attorney and handling for her a personal injury suit arising out of a 1965 rear-end collision, defendant performed his duties so negligently that the Philadelphia Court of Common Pleas entered a nol pros against plaintiff for persistent failure to answer interrogatories.

We had thought throughout the holding of the damage trial on October 10, 1975, and until defendant filed his post-trial proposed findings of fact and conclusions of law that the only task confronting us was the proper evaluation of opinion testimony offered by plaintiff's expert and defendant's expert, the only two witnesses appearing at trial. We based this belief upon information the parties communicated to us in pretrial conference and, especially, upon a formal stipulation entered into by the parties and made part of the record (Doc. # 14) and an elaborate set of 110 admissions made by defendant, admitted into evidence at trial without objection from defendant's counsel (N.T. 5), and incorporated into the trial transcript (N.T. 5–29). The salient portions of the record stipulation read:

1. No issue exists as to defendant's liability as same has expressly been admitted for the purpose of assessment of damages.

4. The parties shall utilize the pleadings and papers already filed of record in presenting his or her respective case in chief. In addition, the parties are permitted to present one expert witness whose testimony shall be limited to his opinion as to the val-

ue of Elizabeth A. Duncan's case against Harry A. Rowbatham, III, and Delaware Valley Elevator Company. Neither expert witness is permitted to base his opinion, in whole or in part, upon the basis that a possibility might have existed that Elizabeth A. Duncan would not have successfully prevailed in her action against Harry A. Rowbatham, III, and Delaware Valley Elevator Company.

5. The parties shall not be permitted to introduce any other evidence concerning the damages sustained by Elizabeth A. Duncan other than the medical bills and reports dated in or referred to in Plaintiff's Request for Admissions, filed March 27, 1975.

6. Elizabeth A. Duncan is not required to testify in this matter, the Court taking judicial notice that the injuries sustained, as evidenced by the aforesaid Request for Admissions, continue and presently affect plaintiff.

The 110 admissions consist, generally, of lists of treatment, medical bills, and diagnostic statements, all of which defendant admits were "a necessary and a direct result of [plaintiff's] injuries suffered in the accident of November 11, 1965,"[1] the accident which precipitated the state court suit and, because of defendant's mismanagement, eventually precipitated this lawsuit.

Contrary to our expectations, however, and, more importantly, contrary to what we find to be a clear agreement of counsel, contained in the stipulation, to limit the damage issue to a battle of experts over the amount plaintiff would have recovered in settlement or from a Common Pleas jury verdict had not her state suit been dismissed, defendant in his posttrial proposed findings of fact and conclusions of law raises for the first time certain factual and legal contentions. Plaintiff has filed a motion to strike these contentions pursuant to Fed.R.Civ.P. 12(f). We need not consider the appropriateness of approaching the problem through a motion to strike, however, since, for the following reasons, we reject the legal and factual contentions defendant raises in Proposed Findings of Fact # # 2, 5, 6, 7, 9, 12, 15, and 17 and in Proposed Conclusions of Law # # III and IV.

■ Before we examine them separately, we note at the start that a general reason for our rejecting these particular contentions of defendant is that they are all raised for the first time post trial. Especially in view of the sorry history of this action, we feel that any claim defendant has to our consideration and possible acceptance of his lately-raised contentions is far outweighed by our duty to protect plaintiff from unfair surprise and prejudice and by our interest in the orderly administration of justice. On August 8, 1974, plaintiff filed her complaint in this action together with a single interrogatory addressed to defendant. Neither was ever responded to. Plaintiff eventually filed for default, and on December 6, 1974, we entered judgment pursuant to Fed.R.Civ.P. 55(b)(2). On March 27, 1975, plaintiff filed requests for admissions to which defendant never responded. Attorney for defendant did not enter an appearance until October 8, 1975, two days before trial. On October 10, 1975, trial was held; defendant did not attend. The only paper filed in this action by defendant besides counsel's entry of appearance is the proposed findings of fact and conclusions of law, some of which are under discussion

---

1. These admissions are the same as those contained in plaintiff's March 27, 1975, requests for admissions to which defendant never responded. Thus, had not counsel for defendant made these admissions at trial, all 110 would have been deemed admitted under Fed.R.Civ.P. 36 which requires that

[t]he matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney, but, unless the court shortens the time, a defendant shall not be required to serve answers or objections before the expiration of 45 days after service of the summons and complaint upon him.

here, filed post trial on November 11, 1975. Under these circumstances we believe that defendant's conduct throughout this litigation would alone justify our refusal to adopt his proposed findings and conclusions.

■ Our decision to reject these contentions rests on additional grounds, however. Defendant's Proposed Findings of Fact # # 2, 5, 6, 7, 9, 12, 15, and 17 would have us determine that plaintiff has not shouldered her burden of proving that all of her various medical expenses, totaling approximately $10,000, are related to her 1965 accident and that the back injuries resulting from the accident were diagnosed as severe, painful, and permanent. We cannot so find. Any suggestion that the various medical expenses are unrelated to plaintiff's accident is refuted by the 110 admissions admitted without objection at trial and read into the record. These same admissions, especially # # 7–9, 55–58, and 61–65, refute any suggestion that plaintiff's injuries were not diagnosed as serious and painful. Finally, any suggestion that plaintiff's injuries are not permanent is refuted by stipulation # 6 which reads:

> Elizabeth A. Duncan is not required to testify in this matter, the Court taking judicial notice that the injuries sustained, as evidenced by the foresaid Request for Admissions, continue and presently affect plaintiff.

and by defendant's own expert, Mr. Jacobowsky, who testified:

> These records [medical records] stop as of 1971, so I have to draw certain

conclusions beyond that time and I guess they are an educated guess because there is no medical evidence here to establish that this condition is going to be permanent. I can only assume if she has had it for this number of years, it is going to be permanent and she is going to have medical expenses within the future and pain and suffering within the future. N.T. 73.

■ In addition to these factual contentions, defendant, in his post-trial brief raised two new legal issues. In Proposed Conclusion of Law # III, defendant asserts that any gross amount of damages due plaintiff as the amount she would have recovered in her original state court action must be reduced in this malpractice action by the amount of the attorney's fee she would have paid in state court. Proceeding from our general resistance to entertaining defendant's tardily-raised issues, we reject this particular contention for two more specific reasons. First, we note that defendant placed in the record no evidence of his fee arrangement with plaintiff covering the original state court suit. Such evidence is a necessary predicate to raising the legal issue under consideration here.[2] Second, although the case law, scant as it is, divides on the question,[3] we feel the better reasoned cases, reaching a fairer result, hold that plaintiff's damages in the malpractice action need not be reduced by any contingent fee a defendant might have earned had he responsibly and successfully carried out his obligations to plaintiff. Deducting a hypothetical contingent fee fails to compensate

---

**2.** In her brief on the motion to strike, plaintiff raises the possibility that defendant could counterclaim under a quantum meruit theory for costs and expenses incurred in the state court action. After briefly discussing the law in the area, plaintiff states:

> Should Mr. Lord not respond, which is probable that he will not, then based on the record, a set-off of $3000 would not be objected to by plaintiff.

Brief at 16–17. Accordingly, although we agree with plaintiff that defendant has offered no evidence on his costs or expenses, we will award the $3000 that plaintiff offers.

**3.** Compare *Christy v. Saliterman*, 288 Minn. 144, 179 N.W.2d 288 (1970) and *Benard v. Walkup*, 272 Cal.App.2d 595, 77 Cal.Rptr. 544 (1969) *with McGlone v. Lacey*, 288 F.Supp. 662 (D.S.D.1968), *Sitton v. Clements*, 257 F.Supp. 63 (E.D.Tenn.1966), aff'd, 385 F.2d 869 (6th Cir. 1967), and *Childs v. Comstock*, 69 App.Div. 160, 74 N.Y.S. 643 (1902). We note that the courts in *McGlone, Sitton,* and *Childs,* in holding that the contingent fee must be deducted, devoted little discussion to the issue. The *Christy* and *Benard* courts, on the other hand, offer some analysis.

plaintiff fully for her loss of a jury verdict or a settlement in state court since any fee

> which plaintiff might have had to pay defendant had he successfully prosecuted the suit [is] canceled out by the attorneys' fees plaintiff incurred in retaining counsel to establish that defendant failed to prosecute a recoverable action.[4]

*Christy v. Saliterman,* 288 Minn. 144, 179 N.W.2d 288, 307 (1970).

Finally, in Proposed Conclusion of Law # IV, defendant asserts that plaintiff has failed in her burden of proving the collectability of any judgment that might have been rendered in her personal injury action. The flaw in this position is that proof of a judgment debtor's insolvency is part of plaintiff's liability case in a legal malpractice action,[5] and, in this action, we have already entered a liability verdict by default. When such is the case, all well-pleaded allegations of the complaint are considered admitted. *Thomson v. Wooster,* 114 U.S. 104, 109–110, 5 S.Ct. 788, 790–791, 29 L.Ed. 105, 107 (1885); *Trans World Airlines, Inc. v. Hughes,* 38 F.R.D. 499, 501 (S.D.N.Y.1965). In plaintiff's complaint she alleged:

> 9. Plaintiff believes and, therefore, avers that defendant breached the implied and expressed duties owed to plaintiff causing the nol pros of the aforesaid cause of action failing to remedy his breach, and in failing to inform Elizabeth A. Duncan that her cause of action was barred.
>
> 10. *As a direct result of defendant's unlawful breach of* the aforesaid implied and expressed duties *plaintiff has suffered damages* and defendant is therefore liable to plaintiff for the amount of said damages.

(Emphasis added) Given these allegations and the fact of default, we agree with the court in *Trans World Airlines* that

> [a]ttempts by defendant to escape the effects of [his] default should be strictly circumscribed. [He] should not be afforded an opportunity to litigate what has already been deemed admitted in law. In the absence of an exceedingly strong showing that an allegation is untrue, . . ., the allegation stands as admitted.

*Id.* Not surprisingly, except for raising the legal issue of collectability, defendant has made no showing, strong or otherwise, that the state court judgment would have been uncollectable. Even if the question of collectability were considered part of the damage phase of a malpractice action, we would discount defendant's legal position in this case since we find it the clear intent of the stipulation to limit damage testimony to an expert assessment of the amount plaintiff would have received in state court from a jury or in settlement if her case had been responsibly prosecuted.

At long last, we arrive at the issue which we once thought would be the only one confronting us—the dollar amount of damages due plaintiff. At the outset we point out that except for their monetary evaluations, the evaluations of both Mr. Richette, plaintiff's expert, and Mr. Jacobowsky, defendant's expert, are quite similar. Both accepted as a basis for their damage opinions that plaintiff's injuries were serious, painful, and permanent. *Compare* N.T. 34 *with* N.T. 73–74. Mr. Richette's dollar assessment ranged from $150,000 to $300,000 in the instance of a jury verdict to $150,000, what he termed "low jury verdict," for a settlement figure. Mr. Jacobowsky's dollar assessment ranged from $100,000 for a jury verdict to $60,000 to $70,000 for a settlement figure.

In determining an amount somewhere between plaintiff's high fig-

---

4. In footnote 1 of her brief on the motion to strike plaintiff asserts that she has a 50% contingent fee arrangement with her present counsel.

5. In one sense, if the judgment debtors in plaintiff's state court action would have been insolvent, the defendant's negligence might not be the proximate cause of plaintiff's loss.

ure and defendant's low figure, we start with the legal proposition that the measure of damages in this legal malpractice action is that amount which plaintiff would have received from a jury or through settlement of her state court action. *Livingston v. Cox,* 6 Pa. 360 (1847). We next find that considering plaintiff's age and severe injuries, sustained in a rear-end collision, more likely than not her case in state court, responsibly handled, would have settled short of trial. Finally, although both attorney experts were highly experienced and credible, we are persuaded by Mr. Richette's assessment of a settlement figure because of his detailed analysis of the kind of Philadelphia Common Pleas jury to whom plaintiff probably would have presented her case. N.T. 34–35. Mr. Richette further testified that such a jury would have awarded plaintiff at least $10,000 a year, N.T. 34, for the period of 23.4 years, plaintiff's life expectancy as stipulated to by the parties. This $10,000 figure appears likely in view of plaintiff's injuries, and multiplying it by the figure for life expectancy yields a sum of over $230,000, approximately the midpoint between Mr. Richette's high and low verdict estimate. In awarding damages, however, we will reduce Mr. Richette's settlement figure by $25,000 to $125,000 because we find from his testimony, *compare* N.T. 34–35 *with* N.T. 61–62, that Mr. Richette considered to a limited extent in his assessment damages arising from possible psychiatric injury. Such consideration is beyond the bounds of the stipulation and no record evidence supports it.

We, therefore, enter judgment for plaintiff and against defendant in the amount of $122,000 with interest from the date of judgment.[6]

This opinion constitutes our findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

---

6. This figure reflects our deduction of the $3000 discussed in footnote 2 *supra.*