[Civ. No. 57011. Second Dist., Div. Five. June 18, 1980.]

KANE, KANE & KRITZER, INC., Plaintiff and Appellant, v.
JOSEPH L. ALTAGEN, Defendant and Respondent.

COUNSEL

Hochman, Salkin & DeRoy and George DeRoy for Plaintiff and Appellant.

Lewis, D'Amato, Brisbois & Bisgaard and Joseph M. Andrews for Defendant and Respondent.

OPINION

**HASTINGS, J.**—Appellant appeals from a judgment in its favor against an attorney for legal malpractice in the amount of $1,016.46 on the ground that the trial court committed error in finding a limited employment was undertaken by the respondent and in reducing appellant's

damages by the amount of the contingent fee respondent would have received had he not been negligent in handling appellant's case.

Appellant's complaint for malpractice alleged that respondent had orally agreed to prosecute an action against Wilsen Construction & Development Corporation (Wilsen) for $25,449.26 that it owed appellant for the furnishing and installing of carpeting on various construction projects, that respondent filed the lawsuit but negligently failed to serve the summons and complaint which led to a judgment of dismissal, and that as a proximate result of said negligence appellant lost the balance owed.

The trial court found that respondent was negligent as alleged but that with the exception of $1,355.31 any amounts which may have been due were barred by the statute of limitations at the time respondent had been retained to file suit. As to the $1,355.31 the trial court reduced the award by 25 percent (to $1,016.46) which represented the contingent fee respondent would have been entitled to had the collection been successful.

Respondent had represented appellant in other collection matters for many years under a rather loose, and informal attorney-client relationship. Important to this case is the trial court's finding and conclusion that during the critical period when the statute of limitations ran on most of appellant's claims against Wilsen, respondent had undertaken a limited and special employment, and that the nature of that employment did not impose upon respondent a duty to file a complaint prior to September 1970, nor to advise appellant of the necessity of filing a complaint prior to that date.

Other facts will be added where required.

### Contentions on Appeal

1. Appellant contends that the evidence in this case does not support the conclusion that respondent's employment occurred after the statute of limitations had passed. In addition, appellant argues that even if the evidence is deemed sufficient to support the findings of the trial court, the interests of justice would not be served by affirming the trial court's judgment in this instance, based on the following policy arguments: (a) respondent should not be allowed to sustain a defense of limited duty based on practices and conduct which appellant claims are

"invidious to the public and the legal profession," (b) a lawyer should be required to delineate and memorialize any limitations on his engagement which would limit the duty owed to his client, (c) an attorney owes a duty to volunteer advice even when he has not been asked to do so, in order to further the interests of his client.

2. The trial court erred in deducting 25 percent from the judgment as attorney's fees as this indirectly compensated respondent for his own negligence.

## Discussion

1. ■ "While neither a retainer nor formal agreement is required to establish the attorney-client relationship [citation], the relationship with respect to a particular transaction is nevertheless required to create the duty of an attorney to act for his client in the transaction." (*Brandlin* v. *Belcher* (1977) 67 Cal.App.3d 997, 1001 [134 Cal.Rptr. 1].) The evidence concerning the Wilsen transaction that had a direct bearing on this issue is as follows.

Appellant is a corporation, formed in 1963, as the successor to a partnership which had done business since the early 1940's. Respondent is an attorney who represented the partnership and the corporation in various matters from the early 1940's until the instant action was filed in 1974. Over this period respondent handled approximately 50 collection matters for appellant. A pattern of handling these cases developed where Mr. Kane, a principal of appellant with whom respondent dealt with almost exclusively, would either call or come into respondent's office and tell respondent to send a letter on behalf of appellant demanding payment to whomever Kane designated. On many occasions the person or company to whom the letter was addressed would contact Mr. Kane and arrange payment, or sometimes a check would come to respondent who would then forward it to appellant. Although there was no set figure, respondent usually received a fee of 25 percent of the amount collected. On some occasions respondent filed lawsuits in the collection matters, but never unless first instructed to do so by Kane.

Respondent testified that he first talked to Kane about the Wilsen claim in 1967, shortly before the usual demand letter was sent. Respondent also stated that before the letter was sent, Kane did not show to or leave with him any documents, or tell him anything which indicated when charges had been incurred or payments made on the accounts.

Rather, respondent testified, he made notes while Kane read to him from some papers he had brought with him. In addition, respondent stated that during this first discussion he was instructed only to send a demand letter to Wilsen, and await a response. He was not told to "do whatever [was] necessary to collect the claim," nor was he asked advice as to when or whether a lawsuit should be filed. Thus, respondent's understanding of his responsibility after the first discussion was to send a collection letter, and to notify Kane whether or not a response was received.

After the demand letter was sent, respondent received a call from a representative of Wilsen and arranged a meeting at his office between Kane and the representative regarding the possibility of settlement. Respondent stated that Kane did not ask advice as to how the negotiations should be handled and that he merely acted as a "leveling force" during the discussion between the two parties. Wilsen's representative ultimately conceded that some money was due appellant and a check was subsequently sent to respondent to hold in trust pending further negotiations.

Prior to September 1970, respondent had no discussions with Kane concerning the filing of a lawsuit against Wilsen. Moreover, it was his belief that Kane and Wilsen's representative were attempting to resolve the matter between themselves. In September 1970, Kane told respondent that he no longer wanted to "fool around," and that respondent should file a lawsuit against Wilsen. It was at this time that Kane delivered to respondent the statements showing charges and credits to the Wilsen account and, as was the usual procedure, a check covering filing fees and costs.

In addition, respondent's testimony indicated that Kane was probably more knowledgeable than the typical layperson with regard to legal matters. Kane reportedly filed his own lien notices, handled small claims matters for his business, and at the time he instructed respondent to file the lawsuit informed him that it would be a "simple complaint."

It is well settled that "where the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is *any* substantial evidence to support them; . . . we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to re-

solve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom." (*Overton* v. *Vita-Food Corp.* (1949) 94 Cal.App. 2d 367, 370 [210 P.2d 757].) The testimony of a single witness, even the party himself, is sufficient. (*Menning* v. *Sourisseau* (1933) 128 Cal.App. 635, 639 [18 P.2d 77].) ■ Based upon the above evidence the trial court could reasonably find that a limited employment was undertaken by respondent with respect to the Wilsen matter, and that the nature of this employment did not impose upon respondent a duty to file a complaint prior to the time he was instructed to do so by Kane, nor to advise appellant of the necessity of filing a complaint prior to that date.

In addition, under the factual situation presented here there was no need to "memorialize the limited nature and extent" of respondent's duty as appellant contends should have been done. The relationship between the parties was one of longstanding in which time a course of dealing was developed. This course of dealing served to sufficiently delineate the responsibilities of the parties.

2. ■ The more challenging issue concerns the court's reduction of the $1,355.31 award by the amount appellant normally would have paid respondent as attorney's fees if the collection had been competently handled.[1] Appellant claims an attorney should not be compensated for his own negligence. Respondent relies on cases from other jurisdictions· that permit such a reduction and Code of Civil Procedure section 1021.[2] If the attorney's fee is not deducted from the award, he claims appellant is indirectly recovering attorney's fees in violation of the section.

Both parties agree that there is no California decisional law directly in point and our research was similarly unrewarding. What the research *did* disclose was two diametrically opposed points of view in other jurisdictions. The cases supporting the deduction do so strictly on a measure of damage theory; namely, that the client is entitled only to what he would have recovered had the attorney properly handled the collection.

---

[1]The court made a finding that the cost to appellant for collecting the amount still due and owing from Wilsen, would have been 25 percent of any amount collected. This finding was apparently based on the prior dealings of the parties in collection matters and not upon any specific arrangement between the parties.

[2]Code of Civil Procedure section 1021 provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to costs and disbursements, as hereinafter provided."

(*Childs* v. *Comstock* (1902) 69 App.Div. 160 [74 N.Y.S. 643, 649]; *McGlone* v. *Lacey* (D.S.D. 1968) 288 F. Supp. 662, 665.)

The more recent cases disagree with this approach on the ground that deduction of a hypothetical contingent fee does not fully compensate the plaintiff for the loss as it is cancelled out by the attorney's fees plaintiff incurred in the malpractice action. (*Christy* v. *Saliterman* (1970) 288 Minn. 144 [179 N.W.2d 288, 306-307] and *Duncan* v. *Lord* (E.D.Pa. 1976) 409 F.Supp. 687, 691-692.)

Although not directly in point, both parties claim a California case, *Benard* v. *Walkup* (1969) 272 Cal.App.2d 595 [77 Cal.Rptr. 544] has language that supports their own position. Unfortunately it does not aid either party. In *Benard*, the court disallowed any deduction because the precise amount of damages that plaintiff might have gained by a full performance of his attorney was unknown. The court noted that full performance on the attorney's part might have uncovered greater damages than those approved by the court, and concluded at page 606, "Under the circumstances, therefore, the applicable rule is that which states that one whose wrongful conduct has rendered difficult the ascertainment of damages cannot complain because the court must make an estimate of damages rather than an actual computation." In our present case there is no speculation concerning the damage award of $1,355.31.

The California case of *Estate of Kruger* (1900) 130 Cal. 621 [63 P. 31] is peripherally in point. The attorney for the estate sought reasonable fees for the work he performed during probate. Heirs opposed the fees on the ground that the attorney had negligently performed his duties in connection with a suit brought against the executors. Because the attorney failed to present a motion for a new trial and amendments on behalf of the executors in a timely manner, a judgment was entered against them that resulted in a substantial loss. The court agreed that the heirs' objection was well taken stating (p. 626): "But even if the negligence was not of such a nature as to be actionable . . ., it should still have been considered in determining the value of the services. If because of the unskillful or negligent manner in which the service was performed it was a detriment and not an advantage, no compensation should have been allowed."

As stated earlier, the decisional law is almost evenly divided and the two theories cannot be reconciled by compromise or modification. We believe the more modern cases (*Christy* v. *Saliterman, supra,* 288

Minn. 144 [179 N.W.2d 288]; *Duncan* v. *Lord, supra,* (E.D.Pa. 1976) 409 F.Supp. 687, and *Andrews* v. *Cain* (1978) 62 App.Div.2d 612 [406 N.Y.S.2d 168]) reach a more desirable result. The older cases that permit the deduction do so under the rationale that the client is entitled only to what would have been recovered had the attorney performed competently. (*Childs* v. *Comstock, supra,* 74 N.Y.S. 643; *McGlone* v. *Lacey, supra,* 288 F.Supp. 662.) This logic, however, is somewhat self-destructing because the attorney has not handled the matter competently. We agree with the court's conclusion, on this issue, in *Andrews* v. *Cain, supra,* 406 N.Y.S.2d 168, 169, where it stated: "Crediting the defendant with a fee he has failed to earn not only rewards his wrongdoing, but places on plaintiffs' shoulders the necessity of paying twice for the same service."

In conclusion, we disagree with respondent that this approach violates Code of Civil Procedure section 1021 because appellant is indirectly recovering attorney's fees not authorized by the section. Here we have a *sui generis* situation not specifically covered nor within the spirit of the section. (*Holy Trinity Church* v. *United States* (1892) 143 U.S. 457, 459 [36 L.Ed. 226, 228, 12 S.Ct. 511].) There was no request for attorney's fees by either party to the litigation. Instead, the fictional or figurative use of attorney's fees became a collateral issue in a determination of damages, and for the reasons stated should not have become an element bearing on such award.

The portion of the judgment reducing the award of $1,355.31 to $1,016.46 is reversed. The balance of the judgment is affirmed. The parties shall bear their own costs of appeal.

Stephens, Acting P. J., and Ashby, J., concurred.

A petition for a rehearing was denied July 15, 1980.