William J. McCAFFERTY, Plaintiff–
Appellee and Cross–Appellant,

v.

L. Richard MUSAT and Opland & Musat, P.C., Defendants–Appellants
and Cross–Appellees.

No. 88CA0615.

Colorado Court of Appeals,
Div. V.

Dec. 13, 1990.

As Modified on Denial of Rehearing
March 14, 1991.

Certiorari Denied Oct. 7, 1991.

Charles Welton & Associates, P.C., Charles Welton, Denver, for plaintiff-appellee and cross-appellant.

Sherman & Howard, Michael A. Williams, Christopher J. Koenigs, Denver, for defendants-appellants and cross-appellees.

Opinion by Judge JONES.

The defendants, L. Richard Musat and Opland & Musat, P.C. (collectively Musat), appeal the judgment entered upon a jury verdict finding them negligent in their legal representation of the plaintiff, William J. McCafferty. We affirm.

In April 1980, plaintiff, while employed as a miner at the Climax Molybdenum mine near Leadville sustained serious injuries

during certain blasting operations that used an explosive fuse cord, Primacord, manufactured by the Ensign–Brickford Co. The injury occurred when a miner on a different level of the mine lit the Primacord while McCafferty was still holding a box of it.

After receiving workers' compensation benefits and seeking legal advice from other attorneys, McCafferty contacted Musat concerning a tort case against Ensign–Bickford and the Climax Molybdenum Co. In January 1982, McCafferty and Musat entered into a retainer agreement whereby Musat and his firm agreed to:

> "[T]ake charge of [McCafferty's] claim for purposes of investigating said claim, filing a lawsuit and if, in counsel's judgment, the claim or claims, after initial discovery are meritorious in their judgment to pursue it to final determination or disposition, by legal proceedings or compromise of settlement, as may seem proper and advisable."

Musat advised McCafferty that, because of the Workmen's Compensation Act of Colorado, he had no cause of action against his employer. After analysis, Musat determined that he would file a claim based on the negligent failure of Ensign–Bickford to prepare and implement adequate instructions and safeguards for the use of its Primacord product. Musat sought and received permission from McCafferty to retain co-counsel with experience in product liability cases. Accordingly, Musat proceeded to retain one Griffith. Musat, however, was to remain McCafferty's legal contact.

After preliminary research and investigation were done, Musat and Griffith, on or about May 21, 1982, filed a lawsuit on McCafferty's behalf in the United States District Court. Musat advised McCafferty that he had a strong case and that he "would probably end up settling [the case] for $60,000 a year for the rest of [McCafferty's] life."

The law firm representing Ensign–Bickford was Hall & Evans. Unbeknownst to McCafferty, Musat, beginning in October 1982, actively sought employment with that firm. And, by December 14, 1982, he had told McCafferty's occupational therapist that he would soon be working for Hall & Evans. Thereafter, prior to the completion of a substantial amount of discovery, and before he ever apprised McCafferty of his conflict of interest, Hall & Evans offered Musat a job.

On December 22, 1982, Musat telephoned McCafferty to notify him of the job offer. He then informed McCafferty of his conflict of interest arising as a result of the job offer. Despite his prior statements to McCafferty that his case, although imperfect, was strong, he now told McCafferty that, in his opinion, he had no case against Ensign–Bickford and that Ensign–Bickford was sure to win at trial. Musat therefore proceeded to convey to McCafferty a settlement offer from Ensign–Bickford, via Hall & Evans as counsel, in the amount of $5,000. He recommended that McCafferty accept the offer, calling it a "gift" tendered as a favor to Musat.

Despite his recommendation that McCafferty accept the offer, Musat suggested that McCafferty first discuss it with co-counsel Griffith. McCafferty, however, replied that he trusted Musat's opinion and would do whatever Musat recommended. Nevertheless, McCafferty did contact Griffith, pursuant to Musat's suggestion. Griffith, however, told him that he could not discuss the situation involving the conflict of interest and that it was strictly a matter between McCafferty and Musat. On approximately December 24, 1982, McCafferty reiterated his acquiescence to Musat's recommendation of settlement.

In January 1983, Musat and Griffith received Ensign–Bickford's answers to McCafferty's interrogatories. One answer indicated that Ensign–Bickford technical representatives had provided oral instruction at the Climax mine concerning the use of Primacord. Musat ignored an answer to an interrogatory which provided a possible link between Ensign–Bickford's alleged negligence and McCafferty's injury. Moreover, he persisted in his recommendation that McCafferty take the $5,000 settlement.

Soon thereafter, Musat presented McCafferty with a Disclosure Agreement. That document disclosed, *inter alia*, that Musat had a conflict of interest and stated that McCafferty's case had no reasonable likelihood of success on the merits of the defective product claim. There was no reference to other claims for relief. It further stated that Ensign–Bickford had made a "final offer" of $5,000, which McCafferty had chosen to accept. Both McCafferty and Musat signed the disclosure agreement, and the proceeds of the settlement were tendered to McCafferty on January 13, 1983. After subtracting costs and attorney fees, McCafferty was left with $1,176. On January 17, 1983, Musat began work with Hall & Evans.

Subsequently, McCafferty initiated this action against Musat, Musat's law firm, and Griffith, claiming that, by recommending settlement before adequately pursuing discovery, they had violated the retainer agreement and negligently failed to use the degree of skill, knowledge, and judgment ordinarily possessed by members of the legal profession. McCafferty also claimed that Musat and his law firm had engaged in outrageous conduct. He sought both compensatory and punitive damages.

At trial, the court dismissed all of McCafferty's claims against Griffith, as well as his outrageous conduct and punitive damages claims against Musat. The issue of Musat's professional negligence was presented to the jury in a "trial within a trial." The jury considered the evidence from the underlying negligence case and awarded McCafferty damages in the amount of $801,600. Musat moved for a judgment notwithstanding the verdict, which motion was denied by the trial court.

## I.

Musat first contends that the trial court erred in denying his motion for judgment notwithstanding the verdict or, in the alternative, for new trial. In support of that motion, Musat alleged that, in the underlying case between McCafferty and Ensign–Bickford, McCafferty could not, as a matter of law, have prevailed and that McCaf-

ferty could not reasonably have relied upon Musat's advice concerning whether to settle the underlying case once Musat disclosed his conflict. We disagree with Musat's contention.

A judgment notwithstanding the verdict may be entered only if reasonable persons, viewing the evidence in the light most favorable to the party against whom the motion is directed, could not reach the same conclusion as the jury. *Alzado v. Blinder, Robinson & Co.*, 752 P.2d 544 (Colo.1988).

## A.

We disagree with Musat's claim that judgment notwithstanding the verdict should have been granted as to the jury's determination that McCafferty could have prevailed in his negligence action against Ensign–Bickford.

To be entitled to recover for negligence, there must be a duty owed, a breach of that duty, and damages as a result of such breach. The question of the existence of a duty is one for the court to determine. *Observatory Corp. v. Daly*, 780 P.2d 462 (Colo.1989).

If one undertakes, gratuitously or for a consideration, to render services to another, which service he should recognize as necessary for the protection of a third person, a duty arises, and he is subject to liability to that third person for physical harm resulting from his failure to exercise reasonable care in carrying out his undertaking. *DeCaire v. Public Service Co.*, 173 Colo. 402, 479 P.2d 964 (1971); Restatement (Second) of Torts § 324A (1965) (especially comments a, d, and e); Restatement (Second) of Torts §§ 388 and 390 (1965). Furthermore, the concept of negligent performance of an undertaking to render services applies to nonfeasance as well as malfeasance. *Jefferson County School Dist. R–1 v. Justus*, 725 P.2d 767 (Colo. 1986).

While the evidence was sharply disputed, when that evidence is viewed in a light most favorable to the verdict, as we must, the record discloses the following with reference to McCafferty's claims against En-

sign–Bickford. McCafferty presented the testimony of an explosives expert, Albert Teller. Teller testified that he reviewed trade reports in Ensign–Bickford's files, Bureau of Mines information, the Climax Mine safety sheet, and the Mine Safety and Health Administration report and state accident report. Based on that information, he opined that there was evidence showing that Ensign–Bickford technical representatives had visited the Climax mine, had witnessed substandard blasting procedures using Ensign–Bickford products, and had neither sought to remedy those procedures nor the misuse of the Primacord product. The expert opined, therefore, that the blasting procedures for coordinating blasts at the mine at the time of McCafferty's injuries "were very, very substandard."

Specifically, Teller testified that Ensign–Bickford had neither recommended nor instituted a written procedure for taking a head count and insuring that all participants in the operation and others were beyond a safe distance of the blasts. He noted that there was "no procedure to insure that one man, and only one man, could possibly fire the shot and then only after he knew that everybody was out." He stated that if an Ensign–Bickford "technical representative sees all sorts of people running around and nobody checking it out, and nobody [is] making sure that there is a way of determining what or who is or is not present when they start and when they finish ... it's my opinion that ... somebody dropped the ball."

The expert also testified, based on his review of the Ensign–Bickford trade reports, that the standard of care required of Ensign–Bickford technical representatives would have required them 1) to inform the Climax miners that their use of the Primacord product was dangerous and substandard, and 2) to institute a written procedure for coordination of the blast. Finally, he testified that the Ensign–Bickford technical representatives failed to meet that standard of care.

In addition, a representative of the Climax Mine testified that the Ensign–Bickford technical representatives were con-

sidered experts in their field by Climax employees. He further testified that, had Ensign–Bickford representatives given Climax employees adequate and complete advice and instruction as to the use of Primacord, the employees would have heeded such advice.

The jury was instructed as to negligence, reasonable care, causation, and damages. It returned a verdict finding Ensign–Bickford had been guilty of such negligence as would have enabled McCafferty to recover against it. The jury also determined the probable amount of damages McCafferty would have recovered, as well.

We agree with the trial court's determination that Ensign–Bickford had a duty to McCafferty arising out of the fact that its technical representatives knew of or should have known of, and should have set out to remedy, the inadequate instructions to the Climax mine's personnel, and the dangerous and substandard use of Primacord by those personnel. We also conclude that that evidence was sufficient to allow a reasonable jury to find that McCafferty could have prevailed on his negligence claim against Ensign–Bickford and to determine what the probable damages would have been.

### B.

We also conclude that the trial court did not err in denying Musat's motion for judgment notwithstanding the verdict on McCafferty's malpractice claim against Musat.

■ To recover for professional negligence, one must show that the professional breached a duty of care owed to the plaintiff and thereby caused the plaintiff to suffer damages. *CJI–Civ.3d* 15:23 (1989); *see generally Palmer v. A.H. Robins Co.,* 684 P.2d 187 (Colo.1984).

■ The measure of the duty owed by an attorney to his client is that he must employ that degree of knowledge, skill, and judgment ordinarily possessed by members of the legal profession at the time the task is undertaken. *Boigegrain v. Gilbert,* 784 P.2d 849 (Colo.App.1989); *cf. Myers v.*

*Beem,* 712 P.2d 1092 (Colo.App.1985). Except in clear and palpable cases, expert testimony is necessary to establish the standards of acceptable professional conduct, the deviation from which would constitute legal malpractice. *Boigegrain v. Gilbert, supra.*

■ The question whether the attorney employed the requisite degree of knowledge, skill, and judgment is one of fact for the jury to decide. *Morris v. Geer,* 720 P.2d 994 (Colo.App.1986). And such a finding of fact will not be overturned if supported by the evidence.

■ Again, there are deep conflicts in the evidence. However, when the evidence is viewed, as we must, in a light most favorable to the verdict, the record reveals, concerning McCafferty's claims against Musat, the following. McCafferty presented expert testimony to the effect that, because of the possible pecuniary benefits to Musat of obtaining employment with Hall & Evans, Musat and McCafferty had necessarily discordant interests resulting in a non-waivable conflict to which McCafferty could not consent. In that regard, the expert testified as follows:

"Where a lawyer is at odds [with] his client's interest ... the lawyer has the obligation to get out of [the case]. He cannot represent his client because he cannot do justice for his client when he is in there trying to do something for himself. That's adverse to his client's interest.

.   .   .   .   .

"He has an obligation to notify his client, provide for transition of counsel and get out of the case."

Specifically, McCafferty's expert opined that a reasonable attorney in Musat's position would have investigated the other cases pending locally against Ensign–Bickford, of which there were three. He would have contacted the plaintiffs' attorneys in those cases, and inquired about the plaintiffs' explosives experts. Also, the expert testified that a reasonable attorney would have deposed Ensign–Bickford's technical representatives in order to 1) ascertain the nature of Ensign–Bickford's involvement in the blasting procedures used at the Climax mine, and 2) learn what instructions they had given to Climax personnel. He further testified that a reasonable attorney would have sought out documents with respect to the Climax mine's blasting procedures, mine administration reports, and written investigations of prior explosions, as well as all of Ensign–Bickford documents relating to the Primacord product. Additionally, the expert stated that Musat should have spent more time than he did investigating alternative theories of recovery. He opined that a reasonable attorney in Musat's position should also have spoken to others in the explosives industry and sought their expert advice as a means of directing the discovery process, proving McCafferty's claims, and refuting Ensign–Bickford's defenses. Finally, as to damages, the expert testified that a reasonable attorney in Musat's position would have retained experts in economics and rehabilitation.

Therefore, the expert opined that, despite Musat's disclosure of the conflict, he failed to "use reasonable and ordinary care and diligence in the exercise of his skill and the application of his knowledge" when he conveyed the $5,000 settlement offer to McCafferty after seeking out and receiving an offer of employment from Hall & Evans. McCafferty's expert testified that once Musat sought employment with Hall & Evans, he should have had no contact with the McCafferty case or defense counsel, and that his conflict of interest was such that it could neither be waived nor consented to by McCafferty. In addition, evidence was presented which tended to prove that Musat failed to provide accurate information to McCafferty regarding whether to settle the Ensign–Bickford case.

We conclude that it was reasonable for the jury to find that Ensign–Bickford was negligent in failing to recommend safe blasting procedures and/or to prepare written blasting instructions for use by the miners. We further conclude that the record supports the jury verdict finding

that Musat was negligent in communicating inaccurate or incomplete information to McCafferty. Therefore, the trial court did not err in denying Musat's motion for judgment notwithstanding the verdict.

## II.

■ Musat next contends that the trial court erred in denying his motion to amend the judgment by reducing the amount of the judgment by the amount of the contingency fee McCafferty was contractually obligated to pay Musat. We disagree.

The "majority and generally more recent line of cases" hold that such a deduction should not be made from a legal malpractice award. *Campagnola v. Mulholland, Minion & Roe,* 148 A.D.2d 155, 543 N.Y.S.2d 516 (1989). We adopt that line of cases and the reasoning set forth therein.

One reason for so holding is that deduction of attorney fees from damage awards would constitute a "[failure] to compensate plaintiffs fully for their loss of jury verdicts or settlements, since any fee which plaintiffs may have had to pay the defendant had he [or she] successfully prosecuted the suit is canceled out by the attorney's fees plaintiffs have incurred in retaining counsel in the present action." *Andrews v. Cain,* 62 A.D.2d 612, 406 N.Y.S.2d 168 (1978); *Campagnola v. Mulholland, Minion & Roe, supra.*

Despite views contrary to the above analysis, *see, e.g., Moores v. Greenberg,* 834 F.2d 1105 (1st Cir.1987), our conclusion is bolstered by "an alternate, and more fundamental ground," for holding that Musat is not entitled to a deduction of the amount of their original fee from the legal malpractice award. This ground is that "the negligent attorney is to be considered precluded from recovering his attorneys' fee." Therefore, "the total amount of the initial recovery [is] awardable" in this and similar cases. *See Campagnola v. Mulholland, Minion & Roe, supra; Strauss v. Fost,* 213 N.J.Super. 239, 517 A.2d 143 (1986).

Here, the record reflects that McCafferty's present counsel is entitled to a 50% contingent fee as a result of the appeal of this matter. Were we to allow Musat to deduct the 33.3% he would have received absent his malpractice, the result would be that McCafferty would recover a total of only 33.3% of his damages—an amount equal to both the off-set by Musat and less than the fee paid to his present attorney.

Because we agree that "crediting the defendant with a fee he failed to earn not only rewards his wrongdoing, but places on plaintiff's shoulders the necessity of paying twice for the same service," *Kane, Kane & Kritzer v. Altagen,* 165 Cal.Rptr. 534, 107 Cal.App.3d 36, we conclude that Musat is not entitled to a set-off of the fees he would have retained had he settled the action and received for McCafferty the ultimate $801,600 award. Therefore, the trial court did not err in denying Musat's motion for postjudgment relief.

## III.

■ On cross-appeal, McCafferty contends that the trial court erred in denying his request for prejudgment interest. We agree.

Section 13–21–101(1), C.R.S. (1987 Repl. Vol. 6A) provides, in pertinent part, as follows:

"In all actions brought to recover damages for personal injuries sustained by any person resulting from or occasioned by the tort of any other person, corporation, association or partnership, whether by negligence or by willful intent of such other person, corporation, association or partnership ... it is lawful for the plaintiff in the complaint to claim interest on the damages alleged from the date said suit is filed; and, on and after July 1, 1979, it is lawful for the plaintiff in the complaint to claim interest on the damages claimed from the date the action accrued. When such interest is so claimed, it is the duty of the court in entering judgment for the plaintiff in such action to add to the amount of damages assessed by the verdict of the jury.... On actions filed on or after July 1, 1979, the calculation shall include

compounding of interest annually from the date such suit was filed."

Where motions filed after a jury trial pertain to unresolved substantive matters that were raised in the complaint, "they are not actually directed at obtaining post-judgment relief, and accordingly, the provisions of C.R.C.P. 59 do not apply." *Church v. American Standard Insurance Co.,* 742 P.2d 971 (Colo.App.1987).

"An injury is personal when it impairs the well-being or the mental or physical health of the victim.... In contrast, an injury is not personal when inflicted on property." *Miller v. Carnation Co.,* 39 Colo.App. 1, 564 P.2d 127 (1977).

We conclude that the injuries suffered by McCafferty are personal in nature. We hold that if the case underlying a malpractice action involves actual physical or mental pain and suffering, as here, the injuries suffered by virtue of the malpractice are *per se* to be considered personal injuries. Indeed, any other conclusion would leave a plaintiff such as McCafferty in a far worse position than he would be in had his attorney not committed malpractice.

Here, McCafferty requested statutory interest under § 13–21–101, *et seq.,* in his complaint. After trial, but more than 15 days after the trial court ostensibly entered judgment, McCafferty filed a motion requesting pre-judgment interest. That motion was denied by the trial court.

We conclude that the underlying physical harm upon which McCafferty would have recovered absent Musat's malpractice was clearly personal. Consequently, McCafferty would have been entitled to statutory prejudgment interest on that award. Moreover, because Musat's legal malpractice was an injury personal to McCafferty, we further conclude that the trial court erred in denying McCafferty prejudgment as of the date of the accident, as of which date he would have been entitled to prejudgment interest in the underlying case absent Musat's malpractice. Therefore, the trial court erred in denying McCafferty's motion for prejudgment interest.

The judgment is affirmed as to Musat's motion for judgment notwithstanding the verdict on McCafferty's negligence claim, and reversed as to the court's order denying prejudgment interest.

CRISWELL and RULAND, JJ., concur.