[No. 60158-0-I.   Division One.   April 7, 2008.]

ANDREA SHOEMAKE, ET AL., *Appellants*, v. R. DOUGLAS P. FERRER ET AL., *Respondents*.

---

[5] We decline to award attorney fees to either party in conjunction with this appeal.

*Robert B. Gould* and *Brian J. Waid* (of *Law Office of Robert B. Gould*), for appellants.

*John W. Rankin, Jr.* (of *Reed McClure*), for respondents.

¶1 DWYER, A.C.J. — Andrea and Keith Shoemake appeal both the damage award and the attorney fee award in their

successful legal malpractice action against attorney Douglas Ferrer. The Shoemakes contend that the trial court erred as a matter of law in calculating their damage award because it credited Ferrer with his contingent fee, even though the Shoemakes had to pay another attorney a separate contingent fee in order to remedy the results of Ferrer's negligence. The Shoemakes also contend that the trial court awarded them insufficient attorney fees. Ferrer cross-appeals, contending that the trial court erred by awarding the Shoemakes attorney fees in the first place. Because we conclude that deducting negligent attorneys' proposed contingent fees from legal malpractice damage awards fails to fully compensate successful malpractice plaintiffs, we hold that the trial court erred when it calculated the Shoemakes' damage award. Because we also hold that there was no recognized basis in law or equity for the trial court to award the Shoemakes attorney fees in their malpractice action, we reverse that award as well.

I

¶2 The parties essentially agree on the facts. The Shoemakes hired Ferrer to represent them after Andrea Shoemake was seriously injured in a head-on collision between her car and the car of a drunk driver, Joseph Hernandez. The collision occurred on April 9, 1992. Ferrer and the Shoemakes entered into a contingent fee arrangement, agreeing that Ferrer would receive a fee equal to 40 percent of any damages that the Shoemakes recovered.

¶3 Ferrer prepared a complaint against Hernandez and attempted to serve him with process. Ferrer did not file the complaint in the superior court until April 7, 1995, however, just two days before the statute of limitation on the Shoemakes' claims expired. Ferrer failed to file the required confirmation of joinder pleading, resulting in that court dismissing the complaint on March 6, 1996. Recognizing that the statute of limitation on the Shoemakes' claims had run, Ferrer appeared before the court and urged it to

reinstate the complaint, which it did. The court scheduled trial on the case for March 10, 1997. But Ferrer neither appeared for trial nor notified the Shoemakes that a trial date had been set. He apparently chose this course because, in the intervening years between the service of the complaint and the trial date, Hernandez had completed his jail sentence for drunk driving, had left the state, and could not be located. The trial court again dismissed the Shoemakes' complaint.

¶4 Ferrer never told the Shoemakes of these events. Instead, for years he told them that their case was backlogged in the court and that he would inform them as soon as anything happened. Each of the 10 to 15 times that Andrea Shoemake called to ask him about her case's status, Ferrer told her that the court was too busy to examine her claims.

¶5 In 2005, Andrea Shoemake called the court clerk's office herself. When she did, she learned that her complaint had been dismissed in 1997. She confronted Ferrer with this fact. He told her he had never received notice of the dismissal. He told her that he would seek to have the Shoemakes' case reinstated. Instead, he did nothing.

¶6 Unhappy with this turn of events, the Shoemakes hired a new attorney, Robert Gould, to replace Ferrer and to sue him for malpractice. As with Ferrer, the Shoemakes agreed to pay Gould a contingent fee. Through Gould, they learned that their insurer, State Farm, had offered to pay the $100,000 limit of the Shoemakes' uninsured motorist policy in June of 1995. Ferrer had taken no action on the insurance payment because he "was unsure of the legal ramifications of accepting that payment." Clerk's Papers (CP) at 168. On behalf of the Shoemakes, Gould recovered the still-available payment from State Farm. He then filed a lawsuit on the Shoemakes' behalf against Ferrer, asserting claims for malpractice and breach of fiduciary duty, and seeking delay damages in the form of interest on the $100,000 payment for the more than 10 years that the Shoemakes were forced to wait before receiving it.

¶7 Ferrer admitted liability in his amended answer to the Shoemakes' complaint, but admitted only $52,088 in damages. This amount represented the $100,000 State Farm policy limit, less Ferrer's 40 percent contingent fee, and less a subrogation interest against the Shoemakes' recovery arising out of an unpaid health care bill.

¶8 The parties filed cross motions for summary judgment on the issue of damages.[1] The main issue presented by the motions was whether the Shoemakes' damage award against Ferrer should be reduced by the amount of Ferrer's contingent fee.[2] The trial court entered an order that set damages, and that also awarded the Shoemakes attorney fees in their malpractice action, apparently on the basis of their fiduciary duty claim:

> Judgment for the Plaintiff is entered in the amount of $60,000.00, together with prejudgment interest as delayed damages on the $100,000 State Farm UIM Policy proceeds that would have been paid on June 19, 1995, but for defendants' malpractice and breach of fiduciary duty, until April 18, 2006, which represents the date on which State Farm paid its $100,000 UIM policy limits. . . . Sanctions against Defendant are also appropriate for his deceit, misrepresentation, and breach of fiduciary duty. Plaintiff is therefore awarded reasonable attorney fees and costs incurred to Mr. Gould's office to prosecute this proceeding.

CP at 271.

¶9 The parties were unable to agree on the meaning of this order, and Ferrer moved the court to clarify it. Ferrer maintained that the order awarded interest on the amount of the insurance payment, less the contingent fee he would have recovered had he not been negligent, less the full $100,000.00 payment ultimately made to the Shoemakes by State Farm, for a total award of $30,511.58 plus

---

[1] The Shoemakes' motion also sought a determination of liability on both the negligence and breach of fiduciary duty claims against Ferrer. Ferrer, having already admitted liability, did not challenge these aspects of the motion.

[2] The statute of limitations on the subrogation claim had expired. Thus, the trial court did not allow that proposed reduction of the Shoemakes' damage award.

attorney fees. The Shoemakes maintained that the correct damage calculation was prejudgment interest on the entire $100,000.00 insurance payment with no deduction of Ferrer's fees, or $117,519.31. The trial court accepted Ferrer's characterization and ruled accordingly, finding that the proper damage award was "$130,511.58 plus attorney fees, less the $100,000 State Farm payment previously made, for a net of $30,511.58." CP at 339-40. Thus, stated numerically, the court awarded: $60,000.00 (the principal award of $100,000.00 minus Ferrer's 40 percent contingent fee) plus $70,511.58 (prejudgment interest on the $60,000.00) minus $100,000.00 (the payment made by State Farm to the Shoemakes) equals $30,511.58 (the final damage award). The trial court also awarded the Shoemakes $14,893.37 in attorney fees.

¶10 Both parties appeal.

## II

¶11 The first issue presented is whether a negligent attorney is entitled to have the damages awarded to a successful malpractice plaintiff reduced by the amount stated in the negligent attorney's contingent fee contract. Ferrer urges us to affirm the trial court's reduction of the Shoemakes' damage award by the amount of his proposed contingent fee, contending that not crediting a negligent attorney's fees against the plaintiff's damages creates a windfall for the plaintiff and subjects negligent attorneys to a unique punitive damages theory. Conversely, the Shoemakes contend that the trial court erred by deducting Ferrer's hypothetical contingent fee from the base sum upon which it calculated their interest damages. According to the Shoemakes, deducting attorney fees from a legal malpractice award necessarily fails to fully compensate the successful plaintiff because such plaintiffs must invariably hire another attorney and pay additional legal fees in order to be made whole.

¶12 The trial court's decision on this question was one based entirely on the interpretation and application of

the law, rather than as a trier-of-fact. As such, we review the trial court's order de novo. *VersusLaw, Inc. v. Stoel Rives, LLP*, 127 Wn. App. 309, 319, 111 P.3d 866 (2005). Likewise, we review de novo trial court decisions addressing the proper components of a damage award. *Kobza v. Tripp*, 105 Wn. App. 90, 94-95, 18 P.3d 621 (2001).

¶13 No Washington case decides this issue. Moreover, there is distinct and explicit disagreement both among scholarly sources and among cases from other jurisdictions as to which is the better rule. With that said, the better-reasoned cases recognize that the policy underlying both negligence and breach of contract damage awards—to attempt to restore injured parties to the position they would have been in but for the wrongful conduct of the defendant—favors adopting the more modern rule of not reducing legal malpractice damage awards by an amount equal to the negligent attorney's proposed fee. We thus conclude that the trial court erred by deducting an amount equal to Ferrer's proposed fee from the Shoemakes' damage award.

¶14 The general rule is that the "measure of damages for legal malpractice is the amount of loss actually sustained as a proximate result of the attorney's conduct." *Matson v. Weidenkopf*, 101 Wn. App. 472, 484, 3 P.3d 805 (2000). The aim of any legal malpractice damage award must thus be to place successful plaintiffs, as nearly as possible, in the position they would have occupied had their attorneys capably and honestly represented them.

¶15 Both the leading cases from other jurisdictions and respected academic sources are in sharp disagreement about how to achieve this goal with respect to the proposed fees of negligent attorneys, however. One side of the debate is characterized by the leading treatise on the subject. It is dismissive of cases that fail to reduce malpractice awards by the negligent attorney's fees, arguing that those cases disregard the standard "American rule" that parties should be responsible for paying their own attorneys in litigation:

> The rationale in trading off the client's legal fees in the malpractice action for the defendant's fees in the underlying

action essentially allows a party to recover attorneys' fees in a negligence action. . . . In a legal malpractice case, however, the issue is the client's measure of damages. If the client would have had to pay the defendant or any other attorneys' fees to receive full performance, the value of proper performance, which sets the initial measure of damages, should be reduced by that amount, particularly where the lawyer has rendered services.

3 Ronald E. Mallen & Jeffery M. Smith, Legal Malpractice § 21.18, at 69 (2008) (footnotes omitted). This rationale reiterates the historical view of the issue, which refuses to accept as a valid consideration that the successful legal malpractice plaintiff inevitably must hire a second attorney to secure the recovery that the negligent attorney, by definition, failed to achieve.

¶16 The case most widely cited for this rationale is *Moores v. Greenberg*, 834 F.2d 1105 (1st Cir. 1987). According to the *Moores* court, "the assertion that the fees originally to be paid should not be deducted from a malpractice award because the client will then pay twice for the 'same' services assumes what it sets out to determine: that plaintiff is entitled to recover the attorneys' fees." *Moores*, 834 F.2d at 1111. The *Moores* court reasoned that this is directly contrary to "the general rule in the United States . . . that each suitor bears his own lawyering costs." *Moores*, 834 F.2d at 1111; *accord Sitton v. Clements*, 385 F.2d 869 (6th Cir. 1967), *abrogated by Foster v. Duggin*, 695 S.W.2d 526 (Tenn. 1985); *McGlone v. Lacey*, 288 F. Supp. 662 (D.S.D. 1968); *Childs v. Comstock*, 69 A.D. 160, 74 N.Y.S. 643 (1902), *overruled by Campagnola v. Mulholland, Minion & Roe*, 148 A.D.2d 155, 543 N.Y.S.2d 516 (1989); *Horn v. Wooster*, 2007 WY 120, 165 P.3d 69.

¶17 As indicated by the overruling of the earlier precedents cited in *Moores*, more modern cases have rejected this "American rule" reasoning as inevitably allowing the successful plaintiff less than full recovery. The current *Restatement* of the law on the subject articulates the rationale for the modern majority rule that negligent attorneys are not

entitled to be credited with fees that they failed to earn due to their malpractice:

> When it is shown that a plaintiff would have prevailed in the former civil action but for the lawyer's legal fault, it might be thought that—applying strict causation principles—the damages to be recovered in the legal-malpractice action should be reduced by the fee due the lawyer in the former matter. . . . Yet if the net amount were all the plaintiff could recover in the malpractice action, the defendant lawyer would in effect be credited with a fee that the lawyer never earned, and the plaintiff would have to pay two lawyers (the defendant lawyer and the plaintiff's lawyer in the malpractice action) to recover one judgment.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 53 cmt. c (2000).[3] The *Restatement* thus rejects the *Moores* approach based on cases that conclude that the strict application of the "American rule" to legal malpractice actions creates a structural inequity against plaintiffs who successfully sue negligent lawyers. *See, e.g., Carbone v. Tierney*, 151 N.H. 521, 534, 864 A.2d 308 (2004) ("We disagree that reducing the verdict by the amount of the contingency fee puts the plaintiff in the same position that he or she would have been in if the defendant had performed competently in the underlying action."); *accord Duncan v. Lord*, 409 F. Supp. 687, 691-92 (E.D. Pa. 1976) ("[d]educting a hypothetical contingent fee fails to compensate plaintiff fully for her loss"); *Kane, Kane & Kritzer, Inc. v. Altagen*, 107 Cal. App. 3d 36, 43-44, 165 Cal. Rptr. 534 (1980) ("deduction of a hypothetical contingent fee does not fully compensate the plaintiff"); *McCafferty v. Musat*, 817 P.2d 1039, 1045 (Colo. App. 1990) (credit " 'places on plaintiff's shoulders the necessity of paying twice for the same service' " (quoting *Kane, Kane & Kritzer*, 107 Cal. App. 3d at 44)); *Christy v. Saliterman*, 288 Minn. 144, 174, 179 N.W.2d 288 (1970)

---

[3] Section 53 of the *Restatement*, which comment c addresses, provides: "A lawyer is liable under § 48 or § 49 only if the lawyer's breach of a duty of care or breach of fiduciary duty was a legal cause of injury, as determined under generally applicable principles of causation and damages."

(rejecting *Sitton*, 385 F.2d 869); *DiStefano v. Greenstone*, 357 N.J. Super. 352, 354, 815 A.2d 496 (2003) (applying to contingent fee rule of *Saffer v. Willoughby*, 143 N.J. 256, 670 A.2d 527 (1996), that deducting attorney fees from award does not fully compensate plaintiff).

¶18 Other cases have rejected crediting negligent attorneys with their fees for various other reasons. *See, e.g., Campagnola v. Mulholland, Minion & Roe*, 76 N.Y.2d 38, 555 N.E.2d 611, 556 N.Y.S.2d 239 (1990) (New York public policy bars crediting fees); *Foster*, 695 S.W.2d at 527 (replacement attorney's fees "are in the nature of incidental damages"). Still other cases have attempted to strike a middle ground by allowing only a quantum meruit reduction of the award for those services performed by the negligent attorney that directly benefited the client. *See, e.g., Schultheis v. Franke*, 658 N.E.2d 932 (Ind. Ct. App. 1995); *accord* Samuel J. Cohen, *The Deduction of Contingent Attorneys' Fees Owed to the Negligent Attorney from Legal Malpractice Damages Awards: The New Modern Rule*, 24 TORT & INS. L.J. 751 (1989) (urging quantum meruit approach). This approach has been convincingly criticized, however, for creating difficult and arbitrary factual questions about precisely which of the negligent attorney's actions actually helped the plaintiff and to what extent they did so. *See Carbone*, 151 N.H. at 535 ("it would be difficult for a jury to assign a value to the services provided by the first lawyer, particularly where there is considerable disagreement about whether those services benefited the client in any meaningful way").[4]

¶19 Because Washington cases are unambiguous that legal malpractice damages should fully compensate plaintiffs injured by attorney malpractice, we hold that the modern majority rule adopted by the *Restatement* is the

---

[4] The parties also extensively debate the meaning of our state's decisions regarding fee forfeiture. *See, e.g., Eriks v. Denver*, 118 Wn.2d 451, 824 P.2d 1207 (1992). Those cases are inapplicable. Ferrer has received no fee that can be disgorged. The question before us is, rather, the appropriate measure of the Shoemakes' damages.

best rule for Washington. Reducing a successful malpractice plaintiff's damages by the amount that the attorney would have earned had the attorney not been negligent necessarily fails to put the injured plaintiff in the position he or she would have occupied in the absence of negligence. In virtually every case, the injured plaintiff will be required to hire a second attorney to prosecute the malpractice action against the negligent attorney and will be required to pay that second attorney. Crediting the negligent attorney with fees through a mechanistic application of the "American rule" fails to account for the fact that both the negligent attorney's fees and the fees of replacement counsel are being incurred for the same service. The replacement attorney is required to prove precisely what the negligent lawyer failed to prove—that the plaintiff is entitled to recover on the underlying claim. That this must be done through the vehicle of a malpractice action does not change the fact that the plaintiff's damages are limited to a single recovery on that underlying claim. By definition, reducing that recovery by two sets of attorney's fees leaves the plaintiff in a worse position than the client would have been in absent the malpractice.

¶20 Applying the *Restatement* rule also removes any confusion about the Shoemakes' damage award in relation to the insurance payment that, through replacement counsel's efforts, they eventually received. Once again, stated numerically, the *Restatement* rule simply provides the Shoemakes with: $100,000.00 (the principal award of $100,000.00) plus $117,519.31 (prejudgment interest on the delayed $100,000.00 principal payment) minus $100,000.00 (the payment made by State Farm to the Shoemakes) equals $117,519.31 (the final damage award). In other words, the Shoemakes are simply entitled to the foregone interest on their insurance payment. This result is not particularly surprising—the trial court itself defined the Shoemakes' proper measure of damages as prejudgment interest on the principal payment. The primary reason that the actual award did not reflect this definition was because

the trial court decided to reduce that principal amount by an amount equal to Ferrer's hypothetical contingent fee. The trial court erred by so deciding.

## III

¶21 The next issue presented is whether the trial court abused its discretion by awarding the Shoemakes attorney fees in this malpractice action based on their breach of fiduciary duty claims. Because breach of fiduciary duty by a lawyer is not a recognized equitable ground upon which to award attorney fees under Washington law, the trial court erred in so doing. Thus, this award must be vacated.

¶22 Attorney fee awards are reviewed for abuse of discretion. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 335, 858 P.2d 1054 (1993). A trial court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law. *Fisons*, 122 Wn.2d at 339.

¶23 Attorney fees may be awarded only if authorized by contract, statute, or a recognized ground in equity. *Flint v. Hart*, 82 Wn. App. 209, 223-24, 917 P.2d 590 (1996). *Flint* held that "[a]n equitable ground exists 'when the natural and proximate consequences of a wrongful act by defendant involve plaintiff in litigation with others.'" *Flint*, 82 Wn. App. at 224 (quoting *Armstrong Constr. Co. v. Thomson*, 64 Wn.2d 191, 196, 390 P.2d 976 (1964)). According to the Shoemakes, this means that, because Ferrer's negligent conduct required them to bring suit against him in order to recover interest on the insurance payment he failed to obtain, they are entitled to attorney fees for their malpractice action. Contrary to the Shoemakes' contention, however, *Flint* does not stand for the proposition that attorney fees are routinely recoverable in legal malpractice actions as mitigation damages. Attorney fees are properly considered as mitigation damages only where a defendant's conduct results in the plaintiff being involved in litigation with a *third party*—not simply when an attorney's negligence

draws a lawsuit from the plaintiff. *Cf. Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 139 Wn. App. 743, 758, 162 P.3d 1153 (2007) (attorney fees incurred in a *separate* proceeding recoverable as consequential damages (citing *Flint*, 82 Wn. App. at 223-24)).

¶24 Attorney fees are also not recoverable simply because Ferrer breached his fiduciary duties to the Shoemakes. Contrary to the Shoemakes' present contention, breach of fiduciary duty in the legal malpractice context is not a recognized equitable basis for an award of attorney fees. The Shoemakes rely on *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 799-801, 557 P.2d 342 (1976), for the proposition that a trial court has the inherent power to award attorney fees when a fiduciary's breach amounts to "constructive fraud," and that because Ferrer repeatedly lied to the Shoemakes about their case, his conduct was "constructive fraud" justifying an award of attorney fees. But the Shoemakes misread *Hsu Ying Li*. In fact, the court in *Hsu Ying Li* applied a well-established equitable basis for the award of attorney fees: the prosecution of a successful action to preserve a common fund. *See Hsu Ying Li*, 87 Wn.2d at 799; *see also ASARCO, Inc. v. Air Quality Coal.*, 92 Wn.2d 685, 716, 601 P.2d 501 (1979) ("[t]he actual award [in *Hsu Ying Li*] stemmed from the prevailing party's having preserved partnership assets, i.e., an identifiable fund").

¶25 While the Shoemakes fail to provide any authority holding that a breach of fiduciary duty by an attorney is a recognized equitable basis for an award of attorney fees in a subsequent legal malpractice action, Ferrer provides clear authority to the contrary. In *Perez v. Pappas*, 98 Wn.2d 835, 845, 659 P.2d 475 (1983), the Supreme Court held that plaintiffs were not entitled to an award of attorney fees based on their attorney's breach of his duties as their fiduciary. Similarly, in *Kelly v. Foster*, 62 Wn. App. 150, 154, 813 P.2d 598 (1991), we held that a legal malpractice action, regardless of whether it was based upon a lawyer's breach of fiduciary duty, is an action "to recover

damages . . . , a traditional legal remedy." "Washington courts have not recognized the ordinary legal malpractice action as one in which attorney's fees can be recovered as part of the cost of litigation." *Kelly*, 62 Wn. App. at 155; *see also Dempere v. Nelson*, 76 Wn. App. 403, 410, 886 P.2d 219 (1994) ("bad faith in the underlying tortious conduct is not a recognized equitable ground for awards of attorney fees in Washington").

¶26 Notwithstanding the trial court's characterization of its attorney fee award as "sanctions," the basis for its attorney fee award was that Ferrer breached his fiduciary duty to the Shoemakes in pursuing their personal injury claims; there was no allegation of bad faith in the conduct of this malpractice suit itself. Accordingly, the trial court premised the attorney fee award on the legally erroneous assumption that an attorney's breach of his fiduciary duties to his clients provides a recognized equitable basis for an award of attorney fees in a subsequent malpractice action against the attorney. Thus, the trial court abused its discretion in awarding attorney fees to the Shoemakes.

¶27 Having concluded that the trial court's attorney fee award was improper, we need not consider whether the award was adequate. Similarly, because there was no basis to award attorney fees below, there is no basis to award attorney fees on appeal.

¶28 Reversed.

ELLINGTON AND APPELWICK, JJ., concur.

Reconsideration denied May 8, 2008.

Reveiw granted at 165 Wn.2d 1007 (2008).