225 P.3d 990 (2010)
Andrea SHOEMAKE, by and through a GUARDIAN ad litem to be appointed, and Keith Shoemake, and their marital community, Respondents,
v.
R. Douglas P. FERRER and Jane Doe Ferrer, husband and wife, Petitioners.
No. 81812-6.
Supreme Court of Washington, En Banc.
Argued October 22, 2009.
Decided February 4, 2010.
*991 John Woodruff Rankin Jr., Reed McClure, Seattle, WA, for Petitioners.
Robert B. Gould, Attorney at Law, Seattle, WA, for Respondents.
STEPHENS, J.
¶ 1 This case presents an issue of first impression involving a determination of damages for legal malpractice. After he admitted liability, the trial court ordered attorney-petitioner Douglas Ferrer to pay client-respondents Andrea and Keith Shoemake interest on a settlement that the Shoemakes would have received had Ferrer not mishandled their case. The trial court calculated the interest on a figure of $60,000, representing the $100,000 settlement less Ferrer's 40 percent contingency fee.[1] The Court of Appeals reversed, holding that the prejudgment interest in this case should have been calculated on the total amount of the settlement lost, not the amount the Shoemakes would have recovered after paying a contingency fee. We affirm the Court of Appeals and hold that the respondents' prejudgment interest award may be calculated to include the negligent attorney's fees.

FACTS AND PROCEDURAL HISTORY
¶ 2 In 1992, Andrea Shoemake was badly injured in a car accident when a drunk driver, Joseph Hernandez, hit her head-on. She and her husband, Keith Shoemake, engaged the services of attorney Douglas Ferrer to pursue recovery from Hernandez and the Shoemakes' underinsured motorist insurance carrier, State Farm. They agreed on a 40 percent contingency fee.
¶ 13 Ferrer mishandled the case. He did not file the complaint until April 7, 1995, just two days before the statute of limitations expired, and then failed to file the required confirmation of joinder pleading, resulting in dismissal of the case on March 6, 1996. Shoemake v. Ferrer, 143 Wash.App. 819, 821, 182 P.3d 992 (2008). Ferrer was able to convince a judge to allow the claim to proceed but then failed to show up for the first day of trial. Id. at 821-22, 182 P.3d 992. He also did not notify the Shoemakes, who live out of state, of the trial date. Id. at 822, 182 P.3d 992. The court dismissed the Shoemakes' complaint for the second time. Id.
¶ 4 Ferrer did not tell the Shoemakes that their case had been dismissed. Instead, for several years he told them the delay was due to a backlog at the court and that the court was too busy to consider their claims. Finally in 2005, Andrea Shoemake called the court herself and learned of Ferrer's deceit. When she confronted him, he claimed he would try to get the case reinstated, but he did not.
¶ 5 The Shoemakes hired attorney Robert Gould to pursue the personal injury claim and sue Ferrer for malpractice. Through Gould, the Shoemakes learned that in 1995 State Farm had offered to pay the limit on the Shoemakes' uninsured motorist policy, $100,000. Ferrer had never communicated this settlement offer. Gould recovered the settlement money and then filed a suit against Ferrer alleging legal malpractice and breach of fiduciary duty. He sought damages in the form of interest on the $100,000 payment for the 10 years the Shoemakes had to wait for recovery. The Shoemakes also sought an award of attorney fees "as a result of defendant's flagrant breach of his fiduciary duty to his clients." Clerk's Papers (CP) at 5.
¶ 16 Ferrer admitted liability. The only issue, then, was the amount of damages. Ferrer claimed that his 40 percent contingency fee should be subtracted from the *992 $100,000 before calculating interest. The trial court agreed. Stated numerically, the trial court awarded $60,000 (the settlement award of $100,000 minus 40 percent) plus $70,511.58 (prejudgment interest on the $60,000) minus $100,000 (the payment made by State Farm to the Shoemakes) to equal $30,511.58. The trial court also awarded the Shoemakes reasonable attorney fees as a sanction for Ferrer's fiduciary breach, in the amount of $14,893.37.
¶ 7 Both parties appealed. Ferrer challenged the attorney fee award. The Shoemakes challenged the reduction of Ferrer's 40 percent contingency fee prior to calculating interest. The Court of Appeals reversed the trial court's award of attorney fees because it concluded that a breach of a fiduciary duty was not a recognized ground in equity allowing such an award in the absence of a statute or contract authorizing the award. But the Court of Appeals declined to subtract Ferrer's 40 percent contingency fee from the Shoemakes' award. Stated numerically, the Court of Appeals held the Shoemakes were entitled to $100,000 (the settlement amount without deducting Ferrer's fee) plus $117,519.31 (prejudgment interest on the delayed $100,000 settlement) minus $100,000 (the payment made by State Farm to the Shoemakes), for a total of $117,519.31.
¶ 8 Ferrer petitioned for review, and the Shoemakes cross-petitioned on the issue of whether they could collect reasonable attorney fees in the malpractice action. This court granted Ferrer's petition for review but denied the Shoemakes' cross-petition. Shoemake v. Ferrer, 165 Wash.2d 1007, 198 P.3d 513 (2008).

ANALYSIS
¶ 9 "Generally, the appropriate measure of damages for a given cause of action is a question of law, reviewed de novo." Womack v. Von Rardon, 133 Wash.App. 254, 263, 135 P.3d 542 (2006) (citing Fisher Props., Inc. v. Arden-Mayfair, Inc., 106 Wash.2d 826, 843, 726 P.2d 8 (1986)). Legal malpractice claims may sound in tort or contract. 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 15.41, at 491 (3d ed.2006). Here, the Shoemakes alleged that Ferrer was negligent and breached his fiduciary duty, seeking damages on a tort theory of recovery. CP at 3.
¶ 10 "`The guiding principle of tort law is to make the injured party as whole as possible through pecuniary compensation.'... Simply stated, a plaintiff is entitled to that sum of money that will place him in as good a position as he would have been but for the defendant's tortious act." 16 DeWolf & Keller, supra, § 5.1, at 172 (footnote omitted) (quoting Aker Verdal A/S v. Neil F. Lampson, Inc., 65 Wash.App. 177, 183, 828 P.2d 610 (1992)). The plaintiff should be made whole without conferring a windfall. Id. at 180 n. 1, 828 P.2d 610. When a plaintiff seeks prejudgment interest, the award should compensate "the plaintiff for the `use value' of his damage amount from the time of loss to the date of judgment." Matson v. Weidenkopf, 101 Wash.App. 472, 485, 3 P.3d 805 (2000) (citing Hansen v. Rothaus, 107 Wash.2d 468, 473, 730 P.2d 662 (1986)).
¶ 11 The parties here agree that the Shoemakes are entitled to prejudgment interest but disagree about how to calculate interest to make the Shoemakes whole without conferring a windfall. Ferrer argues that had he acted without negligence, the Shoemakes never would have received the full $100,000 from State Farm, but at most only 60 percent of that sum. Because damages are intended to place the plaintiff in as good a position as she would have been had the tort not occurred, Ferrer argues his contingency fee must be subtracted from the award. And because the Shoemakes would never have received that 40 percent portion of the settlement, he argues they were not deprived of its use, so prejudgment interest on the hypothetical contingency fee is inappropriate. To allow the Shoemakes interest on the entire $100,000 settlement, Ferrer argues, results in a windfall for them and effectively imposes punitive damages against him.
¶ 12 The Shoemakes counter that they cannot be made whole unless Ferrer's contingency fee is credited to their award because they were required to pay a second attorney to complete the job Ferrer failed to do. *993 Suppl. Br. of Resp. at 2. Further, they note fee forfeiture serves the remedial purpose of offering injured clients an incentive to litigate against a wrongdoer. Suppl. Br. of Resp'ts at 9 n. 3, 11 n. 5.
¶ 13 We are thus presented with two competing ways to resolve this case. Although we have not yet considered this question in Washington, several other jurisdictions and academic sources have. The Court of Appeals discussed many of them, and noted that the various authorities are sharply divided on how to resolve the question. A minority view advocates reducing a plaintiff's award by the amount the negligent attorney would have recovered had he or she fully performed. The justification for this view is summarized in a leading treatise on the subject of legal malpractice.
The rationale in trading off the client's legal fees in the malpractice action for the defendant's fees in the underlying action essentially allows a party to recover attorneys' fees in a negligence action. ... In a legal malpractice case, however, the issue is the client's measure of damages. If the client would have had to pay the defendant or any other attorneys' fees to receive full performance, the value of proper performance, which sets the initial measure of damages, should be reduced by that amount, particularly where the lawyer has rendered services.
3 RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE § 21.18, at 71-72 (2009) (footnote omitted).[2] The majority view, on the other hand, refuses to deduct the negligent lawyer's fee in calculating damage to the plaintiff. This is the view espoused by the authors of the Restatement (Third) of The Law Governing Lawyers.
When it is shown that a plaintiff would have prevailed in the former civil action but for the lawyer's legal fault, it might be thought thatapplying strict causation principlesthe damages to be recovered in the legal-malpractice action should be reduced by the fee due the lawyer in the former matter. That is, the plaintiff has lost the net amount recovered after paying that attorney fee. Yet if the net amount were all the plaintiff could recover in the malpractice action, the defendant lawyer would in effect be credited with a fee that the lawyer never earned, and the plaintiff would have to pay two lawyers (the defendant lawyer and the plaintiff's lawyer in the malpractice action) to recover one judgment.
RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 53 cmt. c (2000).
¶ 14 The Court of Appeals adopted the Restatement view, concluding that
[r]educing a successful malpractice plaintiff's damages by the amount that the attorney would have earned had the attorney not been negligent necessarily fails to put the injured plaintiff in the position he or she would have occupied in the absence of negligence. In virtually every case, the injured plaintiff will be required to hire a second attorney to prosecute the malpractice action against the negligent attorney and will be required to pay that second attorney. Crediting the negligent attorney with fees through a mechanistic application of the "American rule" fails to account for the fact that both the negligent attorney's fees and the fees of replacement counsel are being incurred for the same service. The replacement attorney is required to prove precisely what the negligent lawyer failed to provethat the plaintiff is entitled to recover on the underlying claim. That this must be done through the vehicle of a malpractice action does not change the fact that the plaintiff's damages are limited to a single recovery on that underlying claim. By definition, reducing that recovery by two sets of attorney's fees leaves the plaintiff in a worse position than the client would have been in absent the malpractice.
Shoemake, 143 Wash.App. at 829, 182 P.3d 992. Thus, the Court of Appeals reasoned *994 that disregarding a negligent attorney's fees in calculating a plaintiff's damages is simply part and parcel of a compensatory damage award because the plaintiff is burdened with the obligation to pay twice for the same services.[3]
¶ 15 We affirm the Court of Appeals and follow the approach favored by the majority of jurisdictions. In this case, calculating damages without deducting a negligent attorney's hypothetical contingency fee is an appropriate measure of damages. The Shoemakes had to expend fees on a second lawyer in order to finish the job the first lawyer neglected to do. The majority approach makes the plaintiffs whole without conferring a windfall.
¶ 16 Ferrer's argument that this approach amounts to imposing punitive damages on a negligent attorney is unpersuasive. Because the plaintiffs incurred fees in hiring a second attorney, the majority approach compensates the plaintiffs for losses actually incurred as a result of Ferrer's negligence. The award is compensatory and remedial, not punitive or an impermissible award of "transactional costs" as Ferrer argues. Suppl. Br. of Pet'rs at 13, 17-19.
¶ 17 The specific question of prejudgment interest requires further discussion. The Court of Appeals did not address Ferrer's argument regarding the purpose of a prejudgment interest award, which is to compensate a plaintiff for the lost use-value of a damages award. Ferrer reminds us that the purpose of compensatory damages is to position the plaintiff as though the tortious conduct never occurred and that prejudgment interest is available only where a plaintiff was denied the use of funds. He argues that because the Shoemakes would not have received the full $100,000 had he fulfilled his duties as their lawyer, they cannot recover prejudgment interest on the full amount.
¶ 18 We disagree. Ferrer presumes that he would have been due his fee had he properly communicated the $100,000 settlement offer. But this argument ignores the totality of his negligent conduct in representing the Shoemakes, which resulted in the dismissal of their complaint against the driver, and included lying to them about the status of their case. Ferrer has wholly admitted liability for these professional and ethical lapses and makes no argument of entitlement to fees under a theory of quantum meruit. We have recognized that an attorney who breaches his ethical duties may forfeit his fees. Eriks v. Denver, 118 Wash.2d 451, 462, 824 P.2d 1207 (1992). In Eriks, after discussing fee forfeiture and fee disgorgement generally, we articulated the rationale behind the remedy of fee disgorgement, the remedy chosen by the trial court in that case. Id. at 462-63, 824 P.2d 1207. This rationale applies equally to fee forfeiture because imposing forfeiture is "a reasonable way to ... `deter future misconduct of a similar type.'" Id. at 463, 824 P.2d 1207 (quoting In re Eastern Sugar Antitrust Litig., 697 F.2d 524, 533 (3d Cir.1982)). Ferrer suggests that the fee forfeiture and disgorgement cases are inapplicable to the issue of damages for legal malpractice, noting that he "has received no fees to disgorge or forfeit." Br. of Resp'ts/Cross-Appellants at 24. But this argument disregards the conceptual similarity between fee disputes and legal malpractice cases involving tortious conduct by a lawyer. It should make no difference whether the lawsuit arises when the lawyer sues for fees and the client defends on the basis of legal malpractice or when the client brings an action for legal malpractice in the first instance.
¶ 19 Moreover, while Ferrer is correct that compensatory damages are intended to make the plaintiff whole, such damages also frequently include a deterrence component that should not be confused with a punitive award. See, e.g., Savage v. State, 127 Wash.2d 434, 446, 899 P.2d 1270 (1995) (recognizing that tort law is concerned in part with deterring negligent acts); Davis v. Baugh Indus. Contractors, Inc., 159 Wash.2d 413, 419-20, 150 P.3d 545 (2007) (same). Our legal system has a particular interest in deterring *995 lawyers from breaching their ethical duties to their clients. Thus, a legal malpractice plaintiff's damages may appropriately include forfeiture of the attorney's hypothetical contingency fee. See Restatement, supra, § 37 cmt. a at 271-72.[4]

CONCLUSION
¶ 20 We affirm the Court of Appeals and hold that a prejudgment interest award in a legal malpractice action may be calculated on the amount of a lost settlement without deducting for the hypothetical contingency fee the negligent attorney would have earned had he fully performed.
WE CONCUR: BARBARA A. MADSEN, C.J., SUSAN OWENS, CHARLES W. JOHNSON, MARY E. FAIRHURST, GERRY L. ALEXANDER, JAMES M. JOHNSON, RICHARD B. SANDERS, TOM CHAMBERS, JJ.
NOTES
[1] The Court also sanctioned Ferrer for breaching his fiduciary duty, in the amount of the Shoemakes' attorneys fees in the malpractice action. The Court of Appeals reversed, but we did not grant review on this issue.
[2] The treatise also opines, however, that the attorney fees incurred in the legal malpractice action may be recoverable as consequential damages. 3 Mallen & Smith, supra, § 21:6, at 22-26. That argument is beyond the scope of the petition for review granted here, which limits the question to a choice between disregarding the negligent attorney's hypothetical fee or reducing the plaintiffs' award by that amount.
[3] As the Court of Appeals noted, some jurisdictions have advanced other rationales for including the negligent attorney's fees in calculating damages. Shoemake, 143 Wash.App. at 828, 182 P.3d 992. It should be noted that the Restatement's rationale includes a reluctance to "credit" the negligent lawyer with a fee that he never earned. Restatement, supra, § 53 cmt. c.
[4] We decline the Shoemakes' invitation to adopt a bright-line rule regarding fee forfeiture. Here, it suffices that Ferrer admitted negligence and a fiduciary breach that does not stem solely from the uncommunicated settlement offer, and he makes no claim in quantum meruit. He cannot admit liability in this respect and continue to claim an entitlement to his contingency fee in the form of reduced prejudgment interest. Therefore, it is appropriate to consider fee forfeiture in this case prior to calculating interest.