Cratsley, John C., J.
Following a jury trial which returned a verdict and damage award in favor of the plaintiff, Rodrigo Cintra (“Plaintiff’), the plaintiff has brought a Motion for Entry of Judgment. The plaintiffs motion requests that a final judgment be entered in the full amount as calculated by the jury[1] with no reduction based on the contingent fee agreement that existed between the parties, plus $14,381.25 in litigation costs. The defendant, Law Office of Dane M. Shulman (“Defendant”), opposes the plaintiffs motion claiming that the plaintiffs award should be reduced by the amount represented by the contingent fee agreement, and that the costs sought by the plaintiff are excessive. For the following reasons, the plaintiffs Motion for Entry of Judgment is ALLOWED AS MODIFIED.
BACKGROUND
The plaintiff successfully sued the defendant in this legal malpractice case. The jury found the defendant negligent in handling the legal claims of the plaintiff in the lawsuit underlying this lawsuit which concerned injuries suffered by the plaintiff as a result of the negligence of a third party. The defendant’s negligence, as heard and determined by the jury, included failure to properly serve the plaintiffs complaint resulting in the dismissal of the plaintiffs case against the third party as well as failure to take corrective actions to remedy this error. In addition, the defendant’s filing delays exhausted the statute of limitations for the claims. The parties had a contingent fee agreement which would have entitled the defendant to one-third of any award in favor of the plaintiff.
The question of whether a defendant in a legal malpractice action is entitled to an offset of any damages awarded to the plaintiff based on the contingent fee agreement between the parties is a novel one for this Court. The majority of other jurisdictions which have ruled on this question have rejected the offset of damages based on contingent fee agreements. However, the First Circuit allowed such an offset in Moores v. Greenberg, 834 F.2d 1105 (1st Cir. 1987). In the Moores decision, the federal appellate court stated that Massachusetts would likely reach the same conclusion and, indeed, a rule inferred from Moores has been adopted in the MCLE jury instructions.[2]
DISCUSSION
1. Use of Contingent Fee Agreement to Offset Damage Award Is Not Supported in Case Law for this Situation
The majority of jurisdictions that have considered the issue of allowing an offset to an adverse judgment to a defendant in a legal malpractice action have rejected the reduction.[3] Three major arguments against an offset emerge from these cases. First, that the full measure of the plaintiffs damages in the malpractice action is determined by the size of the judgment lost in the underlying action. See Carbone v. Tierney, 151 N.H. 521, 534 (2004). Second, that the lawyer found liable for malpractice should be prohibited from benefiting from the contract he violated. See Andrews v. Cain, 406 N.Y.S.2d 168, 169 (1978). Third, that the fee which the plaintiff would have paid to the negligent lawyer is “cancelled out” by attorneys fees he pays upon winning his malpractice action. See id. In addition to these three arguments, there are also policy considerations against applying an offset, such as providing lawyers with additional deterrence to breaching ethical duties to clients and holding the unique attorney-client relationship to a different standard than traditional contract principles.[4] See Shoemake v. Ferrer, 168 Wn.2d 193, 203 (2010), and Campagnola v. Mulholland, 76 N.Y.2d 38, 38-39 (1990). Taken as a whole, I find these arguments against application of an offset based on the underlying contingency fee agreement persuasive.
Notwithstanding the analysis adopted by the majority of jurisdictions, the First Circuit allowed an offset for the attorney’s contingency fee in Moores v. Greenberg, 834 F.2d 1105 (1st Cir. 1987).[5] In Moores, the lawyer Greenberg did not disclose a settlement offer to the injured worker Moores. While defendant Shulman cites the holding of Moores as an unequivocal statement that an offset should be applied (particularly in Massachusetts), the rule inferred from Moores is not so absolute. Judge Selya’s decision in Moores turned on the certainty of the settlement offer, the certainty that the client would have accepted the offer, and the involvement of the lawyer in procuring the offer.[6] Judge Selya carefully distinguishes the cases in which no offset is allowed and posits exceptions to the holding, saying, “Where a lawyer accepts an engagement and thereafter fails to show up at the starting gate, e.g., . . . failure to file suit within statute of limitations . . . failure to serve mandatory notice of claim within prescribed period ... it is arguably equi *272 table to fix damages without regard to a fee entitlement which would only have come into existence had the lawyer performed the contract.” Moores at 1112. This hypothetical imagined by Judge Selya is exactly the situation here. The defendant was found negligent by the juiy for failure to properly serve the plaintiffs complaint, and for allowing the statute of limitations to expire without simple corrective action. Following this language in Moores, an offset for the unearned contingency fee would be inequitable. Further, there was no evidence at trial from the defendant that any substantial amount of work was performed on the plaintiffs behalf for which the defendant should be compensated nor has the defendant argued for fees in quantum meruit. Thus, the deduction of one-third of the juiy award to account for the contingency fee is inappropriate here and I decline to subtract it from the final judgment.
II. Judicial Estoppel
The equitable doctrine of judicial estoppel can apply when a litigant asserts inconsistent positions on the same legal issue. See Fay v. Federal National Mortgage Assoc., 419 Mass 782, 788 (1995). While the requirements for judicial estoppel are not rigidly defined, two key principles are at the core of this equitable doctrine. First, that the position now taken by the plaintiff be “directly inconsistent” with or “mutually exclusive” of the plaintiffs prior position on the same issue. Second, that the plaintiff had successfully persuaded the court to accept the previous position. See Otis v. Arbella, 443 Mass. 634, 640. The application of judicial estoppel is discretionaiy. See New Hampshire v. Maine, 532 U.S. 742, 750 (2001).
The defendant claims that the plaintiff did not object to a proposal made in open court for a deduction of the contingency fee to be made once the juiy reached its verdict and, thus, he is estopped from now arguing that there should be no offset. In support of this theoiy, the defendant references the conference during trial where counsel for both parties and I discussed the instructions to the juiy with regards to damages. The specific discussion is found in the following exchange from the transcript.[7]
THE COURT: . . . Now, the one-third set off to Shulman again if they answer Question 6 yes and give a damage award, do you want me to tell them that the Court reserves the right to determine, do you want me to say anything?
MR. RISEBERG [for the defendant): Well, I submitted that instruction—•
THE COURT: Right.
MR. RISEBERG:—because I wasn’t sure the Court was inclined to just resolve that issue, but I actually think that it’s more appropriate to handle it the way the Court suggested, and that the instruction would needlessly confuse them.
THE COURT: All I’m concerned about is that if they [the jurors] read the contract that’s in there, the contract with Shulman’s office for the one-third is in evidence. So, some bright juror may send me a note saying, all right, what do we do about Shulman’s one-third?
MR. RISEBERG: I suggest we wait for that question.
THE COURT: All right.
MR. RISEBERG: If that was to happen we could address it.
MR. BURKE [for the plaintiff): I agree, and I think that we can address it by saying as you previously suggested that’s the Court role to deal with that.
THE COURT: But not say it in the instructions?
MR. BURKE: Right.
In this exchange, counsel for the plaintiff agreed that the issue of the offset would be resolved by the Court; he did not, however, concede that an offset would be applied. The fact that plaintiffs counsel did not object to the decision that the offset would be handled by the Court after the trial does not preclude the plaintiff from arguing against the offset. The two core principles of judicial estoppel are not met by these statements of the parties as represented in the official record.
The first principle of judicial estoppel, that the plaintiffs previous and current positions are “mutually exclusive,” is not supported by the record. A review of the transcript from the discussion of the offset shows two key points with respect to the plaintiffs position during the trial. First, that the proposal at the center of the discussion was that the Court “reserves the right to determine” how to handle any offset in the event that the juiy returned with a damage award for the plaintiff. See line 4 of the transcript, above. Second, that the plaintiffs position on the offset during the trial was that the issue should be dealt with after the trial, at the discretion of the Court See lines 32-34 of the transcript, above. Contrary to the defendant’s assertion, the plaintiff did not concede that a deduction would automatically apply. In my opinion, the plaintiffs current position against the offset is not inconsistent with his position taken at trial. In fact, the plaintiff is actually following through on his previous position by petitioning the Court to resolve the issue of the offset now that the trial is over.
For the second principle of judicial estoppel, even if the plaintiffs attorney took a position during the trial that was “mutually exclusive” with his current position, there is insufficient evidence to suggest that the plaintiff “successfully persuaded” the Court to accept his position during the time of trial. The position that was adopted (that the matter be resolved after trial) was first proposed by the Court, not the plaintiff. See line 4 of the transcript, above. The transcript shows that the decision to handle the issue after trial was agreed to by all of the participants after discussion *273 between the Court and counsel for the defendant. Therefore, it is a stretch to say that the two sentences spoken by the plaintiff in the above exchange persuaded the Court to take the action which was proposed by the Court in the first place. Mere non-objection by the plaintiff to the agreed-upon course of action is insufficient in my view to constitute “successful persuasion” of the Court.
III. Recovery of the Costs of Litigation
The plaintiff seeks to recover $14,381.25 in litigation costs including depositions, expert witness fees, court fees, and other charges. However, the schedule of costs provided by the plaintiff totals $14,593.57.[8] Included in this amount is $8,025 for witness fees. Given that the denial of an offset is based in part on the theory that the plaintiff should use the larger award to cover the costs of the malpractice action, I will apply the strict rule in G.L.c. 292, §29 and reduce the amount for the experts to $6 per day per witness. With no evidence to the contrary, I will assume each witness is entitled to one day of compensation each. The net costs of the successful plaintiff are thus $6,586.57.
ORDER
For the foregoing reasons, it is hereby ORDERED that a final judgment enter for plaintiff in the amount of the net jury verdict of $81,250.00 plus interest from May 31, 2006 as calculated by the clerk’s office plus costs of $6,586.57, against defendant Dane M. Shul-man DBA Law Offices of Dane M. Shulman.

The jury awarded the plaintiff $125,000 with a deduction of 35% for contributory negligence. The net award is $81,250 plus interest.

“If you find that the plaintiff is entitled to damages in this malpractice case, that amount must be reduced by the amount the defendant attorney would have received pursuant to the contingent fee agreement.” MCLE Superior Court Civil Practice Jury Instructions §18.7.3 (2nd Edition 2008).

See Duncan v. Lord, 409 F.Sup. 687 (E.D.Pa. 1976); Carbone v. Tierney, 151 N.H. 521 (2004); Shoemake v. Ferrer, 168 Wn.2d, 193 (2010); Akin v. National Development and Research Corp., 299 S.W.3d 106 (Tex. 2009); DiStefano v. Greenstone, 357 N.J.Super 352 (2003); Campagnola v. Mulholland, 76 N.Y.2d. 38 (1990); McCafferty v. Musat, 817 P.2d 1039 (Colo.App. 1990); Foster v. Duggin, 695 S.W.2d 526 (Term. 1985); Kane v. Altagen, 107 Cal.App.3d 36; Andrews v. Cain, 406 N.Y.S.2d 168 (1978); Christy v. Saliterman, 288 Minn. 144 (1970).

In an exceptional case, the court in DiStefano rejected an offset and awarded attorneys fees for the malpractice suit as consequential damages, stating: “. . . the duplicate recovery, even though a windfall to the plaintiff, is considered the lesser evil to crediting this attorney with an undeserved fee where he has botched the job.” DiStefano v. Greenstone, 357 N.J.Super 352, 357 (2003). Although the present case was not handled in this manner, I note favorably the theory in DiStefano that the court should err in favor of the injured plaintiff in the legal malpractice case.

Moores was appealed from the Massachusetts District Court and the First Circuit applied Maine law in reaching a decision.

On this last point, Justice Burke in a dissent to Horn v. Wooster reframes the Moores decision as effectively an award in quantum memit. See Horn v. Wooster, 165 P.3d 69, 82.

Excerpt from the record of the Jury Charge Discussion from the trial Cintra v. Shulman, shortly after 3:01 pm on Tuesday, December 7, 2010. Transcript prepared by Diane Cercone, Official Court Reporter.

The $212.32 charge for the Middlesex County Deputy Sherriff was apparently omitted from the plaintiffs calculation.